DISCIPLINARY COUNSEL *v.* SIMONELLI.

[Cite as *Disciplinary Counsel v. Simonelli,*
113 Ohio St.3d 215, 2007-Ohio-1535.]

(No. 2006–1190—Submitted December 13, 2006—Decided April 18, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Mark Michael Simonelli of Willoughby, Ohio, Attorney Registration No. 0065965, was admitted to the Ohio bar in 1996.

{¶ 2} On December 6, 2004, relator, Disciplinary Counsel, filed a complaint charging respondent with multiple violations of the Code of Professional Responsibility. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in March 2006. The panel then prepared written findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

Misconduct

{¶ 3} Relator agreed to withdraw Counts II, IV, and V of the complaint before the hearing. We now consider the evidence presented in support of the remaining allegations in the complaint.

*Count I*

{¶ 4} Beginning in the summer of 2002, respondent accepted client referrals from WJW Enterprises, an organization that purported to assist persons trying to keep their homes after foreclosure proceedings had been filed against them. Some of the clients referred by WJW to respondent were in need of advice and

representation on bankruptcy matters. Respondent generally charged each bankruptcy client $600 for his services, plus court costs.

{¶ 5} In September 2002, respondent filed a Chapter 13 bankruptcy petition in the bankruptcy court on behalf of his client Barbara Fletcher, who had been referred to him by WJW. Respondent spoke with Fletcher briefly one time by telephone before he filed the bankruptcy petition, but they never met in person. A runner from respondent's office met with Fletcher at a restaurant so that Fletcher could sign several papers before the bankruptcy filing, but no one explained the documents to Fletcher, and she testified at the disciplinary hearing that she had no idea what the documents were.

{¶ 6} The month after respondent filed Fletcher's bankruptcy petition, another person from respondent's office met Fletcher at a restaurant so that she could sign another document. No one explained the document to Fletcher or discussed respondent's legal fees with her.

{¶ 7} Respondent did not meet or speak with Fletcher before the November 2002 meeting of creditors in her bankruptcy case, and he did not tell her that he would be sending a different attorney to the meeting. Fletcher testified that the other attorney did not know anything about the case.

{¶ 8} In a signed statement on Fletcher's bankruptcy petition, respondent told the bankruptcy court that he had explained to his client the different types of relief available to her under federal bankruptcy laws, but Fletcher testified at the disciplinary hearing that neither respondent nor anyone from his law firm had provided any such explanation to her.

{¶ 9} In another signed statement filed by respondent in Fletcher's bankruptcy case, he stated that he had "not shared or agreed to share with any other entity * * * any compensation" in connection with Fletcher's case. In another filing in the case, respondent stated that Fletcher had paid him $600 for his services, but respondent's $600 legal fee was paid by WJW rather than by Fletcher directly. The president of WJW was James Warsing, who was not an attorney licensed to practice law in Ohio.

{¶ 10} After examining these actions, the board found that respondent had violated the following Disciplinary Rules: DR 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 3–102(A) (prohibiting a lawyer from sharing legal fees with a nonlawyer), and 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter).

*Count III*

{¶ 11} In October 2002, respondent filed a Chapter 13 bankruptcy petition in the bankruptcy court on behalf of his client Amy Wolf, who had been referred to him by WJW.

{¶ 12} In a signed statement on Wolf's bankruptcy petition, respondent told the bankruptcy court that he had explained to his client the different types of relief available to her under federal bankruptcy laws, but Wolf testified at the disciplinary hearing that respondent never spoke with her at any time during the representation, and Wolf never spoke with anyone from respondent's law office before respondent filed the bankruptcy petition for her.

{¶ 13} In another filing in Wolf's bankruptcy case, respondent stated that Wolf had paid him $600 for his services. Wolf testified at the disciplinary hearing that she never paid respondent any money but instead paid $800 to WJW. WJW then paid respondent $600 for his work on the Wolf matter. The president of WJW was James Warsing, who was not an attorney licensed to practice law in Ohio.

{¶ 14} After examining these actions, the board found that respondent had violated DR 1–102(A)(4) and 3–102(A).

### Count VI

{¶ 15} In December 2002, respondent filed a Chapter 13 bankruptcy petition in the bankruptcy court on behalf of his clients Timothy and Sharon Haines, who had been referred to him by WJW. Sharon Haines testified at the disciplinary hearing that respondent never spoke with her at any time during the representation.

{¶ 16} A runner from respondent's office met with Sharon Haines at a restaurant so that she could sign several papers before the bankruptcy filing, but Sharon could not recall for certain whether anyone from respondent's law firm had explained the documents to her before she signed them.

{¶ 17} In January 2003, the bankruptcy trustee moved to dismiss the Haineses' case because they had not filed a Chapter 13 plan. Respondent never discussed the trustee's motion with the Haineses, and the bankruptcy court granted the trustee's motion.

{¶ 18} After examining these actions, the board found that respondent had violated DR 6–101(A)(3).

### Respondent's Objections to the Board's Findings

{¶ 19} We have reviewed the board's report and have also considered the written and oral arguments presented by the parties in response to that report. We find that respondent violated all of the provisions as described above.

{¶ 20} Respondent identifies certain testimony from the disciplinary hearing that conflicts with the testimony and other evidence on which the panel and the board relied in reaching the findings of misconduct noted above. The record supports the panel and the board's findings, however, and "[u]nless the record weighs heavily against a hearing panel's findings, we defer to the panel's

credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise,* 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24. See, also, *Disciplinary Counsel v. Zingarelli* (2000), 89 Ohio St.3d 210, 220–221, 729 N.E.2d 1167 (rejecting an attorney's objections following a disciplinary hearing because "it was the panel members, and not this court, who had the opportunity to evaluate the character and demeanor of the witnesses"). Because we find ample evidence in the record to support the panel and the board's findings, we adopt those findings ourselves.

{¶ 21} Respondent argues as well that he did not violate the DR 3–102(A) ban on the sharing of legal fees with a nonlawyer. Barbara Fletcher and Amy Wolf did, however, pay respondent's legal fees to WJW Enterprises rather than to respondent himself, and WJW's president was not a lawyer licensed in Ohio. WJW kept some of the money that the clients had paid, and then passed some of it along to respondent.

{¶ 22} We agree with the board that this conduct violated DR 3–102(A). We reached a similar conclusion last year involving a different lawyer whose clients had likewise "paid WJW for [the lawyer's] services." *Disciplinary Counsel v. Stranke,* 110 Ohio St.3d 247, 2006-Ohio-4357, 852 N.E.2d 1202, ¶ 5. The prohibition against sharing legal fees with nonlawyers benefits the public by (1) limiting the possibility that a nonlawyer will interfere with the exercise of a lawyer's professional judgment in representing a client and (2) ensuring that the total fee paid by the client is not unreasonably high. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 356 (1988). The prohibition also limits the possibility that a nonlawyer will be motivated to engage in the improper solicitation of business for a lawyer.

{¶ 23} We also reject respondent's arguments on the DR 6–101(A)(3) (neglect) charges. By failing to meet with Barbara Fletcher during his representation of her, by failing to explain bankruptcy documents to Fletcher before she signed them, and by sending an unprepared attorney to a bankruptcy court hearing in Fletcher's case, respondent failed to show proper care for his client's legal needs. Respondent's actions—which he likewise displayed during his representation of the Haineses—fell below the objective standards of reasonable diligence and dedication that we expect of attorneys. See, e.g., *Columbus Bar Assn. v. Flanagan* (1997), 77 Ohio St.3d 381, 674 N.E.2d 681 ("We expect that even in a high-volume practice where an assistant might prepare some forms, an attorney * * * would at least interview and counsel his clients before a course of action was chosen and the documents drafted. We also expect that he would appear at the meeting of creditors as an advocate for his clients"). An attorney's neglect of a client's legal matters undermines public confidence in the legal profession and

may prejudice the client's interests. We agree with the board's findings on the neglect charges in this case.

{¶ 24} Finally, we reject respondent's argument that relator failed to prove the DR 1–102(A)(4) (dishonesty) charges involving Barbara Fletcher and Amy Wolf. Respondent signed statements in his bankruptcy-court filings indicating that he had explained to his clients their options under the bankruptcy code. Yet Wolf testified that respondent had never spoken to her, and Fletcher testified that respondent did not explain the different bankruptcy chapters to her or help her understand the differences among them. Sufficient evidence in the record therefore supports the board's findings that respondent misrepresented his actions to the bankruptcy court by signing the statements in the two cases.

## Sanction

{¶ 25} In recommending a sanction for respondent's misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Mitigating factors cited by the board included respondent's lack of any prior disciplinary violations, the absence of a dishonest or selfish motive, respondent's full and free disclosure of his actions and his cooperative attitude toward the disciplinary process, the imposition of other penalties or sanctions, and five letters vouching for respondent's good character or reputation. BCGD Proc.Reg. 10(B)(2)(a), (b), (d), (e), and (f).

{¶ 26} The board also noted several aggravating factors: a pattern of misconduct, multiple offenses, a refusal to acknowledge the wrongful nature of the conduct, and harm caused to vulnerable victims. BCGD Proc.Reg. 10(B)(1)(c), (d), (g), and (h).

{¶ 27} Relator recommended that respondent be suspended from the practice of law for six months. The panel instead recommended that respondent be suspended for one year, with six months stayed on specified conditions. The board adopted the panel's recommendation as its own.

{¶ 28} We agree with the board's recommended sanction. Last year, we imposed a six-month suspension on an attorney who had likewise shared fees with the WJW bankruptcy counseling firm and had similarly stated on clients' bankruptcy petitions that he had "advised his clients of the different types of bankruptcy prior to filing," when in fact he had not done so. *Disciplinary Counsel v. Stranke*, 110 Ohio St.3d 247, 2006-Ohio-4357, 852 N.E.2d 1202, ¶ 5. That attorney had also neglected his clients by failing to attend creditors' meetings and failing to respond to motions to dismiss. Id. at ¶ 6. When we imposed a six-month suspension for that attorney's violations of the same three

Disciplinary Rules that are at issue in this case (as well as one other rule involving that attorney's unlicensed practice of law in the bankruptcy court), we noted just one aggravating factor (for the commission of multiple offenses) and also noted that the attorney had signed a consent-to-discipline agreement. Id. at ¶ 2, 9–11.

{¶ 29} In this case, although the facts and the misconduct are very similar, we agree with the board that a more severe sanction is warranted in light of respondent's insistence that he has done nothing wrong. We explained in the *Stranke* case that the kinds of actions at issue in this case are unacceptable for an attorney, and yet respondent has maintained that he should not be disciplined. We trust that a longer suspension than we imposed in *Stranke* will prompt respondent to refocus his efforts on the duties of loyalty and diligence owed to clients, as well as his obligation to offer respect and candor to courts and other tribunals.

{¶ 30} In addition, although respondent contends that at most a public reprimand or a stayed suspension is warranted, we have explained that a "violation of DR 1–102(A)(4) ordinarily calls for the actual suspension of an attorney's license." *Disciplinary Counsel v. Beeler*, 105 Ohio St.3d 188, 2005-Ohio-1143, 824 N.E.2d 78, ¶ 44. We see no reason to deviate in this case from that presumptive sanction, particularly in light of the pattern of misconduct involving multiple clients.

{¶ 31} Accordingly, respondent is hereby suspended from the practice of law in Ohio for one year, with the final six months of the suspension stayed, provided that respondent (1) commit no further misconduct during the suspension period and (2) allow an attorney appointed by relator to monitor his law-office management practices and his compliance with the rules governing the professional conduct of attorneys in Ohio during the stayed portion of the suspension. If respondent violates either of these conditions, the stay will be lifted, and respondent will serve the entire term as a period of actual suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PETREE, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

CHARLES R. PETREE, J., of the Tenth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Gallagher Sharp and Timothy T. Brick, for respondent.