**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Mahoning Cty. Bar Assn. v. Yavorcik,* **Slip Opinion No. 2020-Ohio-123.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-123

MAHONING COUNTY BAR ASSOCIATION *v*. YAVORCIK.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Mahoning Cty. Bar Assn. v. Yavorcik,* **Slip Opinion No. 2020-Ohio-123.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with six months conditionally stayed.*

(No. 2019-1086—Submitted September 11, 2019—Decided January 21, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-016.

_____

**Per Curiam.**

{¶ 1} Respondent, Martin Edward Yavorcik, of Youngstown, Ohio, Attorney Registration No. 0070681, was admitted to the practice of law in Ohio in 1999. On May 2, 2016, we suspended him from the practice of law on an interim basis after he was convicted of multiple felonies arising from his involvement in the corrupt activity surrounding Mahoning County's purchase of Oakhill Renaissance Place and from related campaign-finance violations. *See In re*

*Yavorcik*, 145 Ohio St.3d 1453, 2016-Ohio-2741, 49 N.E.3d 317. After his convictions were vacated on appeal, *see State v. Yavorcik*, 2018-Ohio-1824, 113 N.E.3d 100 (8th Dist.), we reinstated his license on January 10, 2019, *In re Yavorcik*, 156 Ohio St.3d 1212, 2019-Ohio-31, 124 N.E.3d 846.

**{¶ 2}** In an October 31, 2018 second amended complaint, relator, Mahoning County Bar Association, alleged that Yavorcik committed multiple violations of the Rules of Professional Conduct arising from his involvement in the Oakhill matter, his false statements and omissions regarding certain financial contributions to his 2008 political campaign, and his neglect of a single client matter around the time of his own criminal trial.

**{¶ 3}** The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors. Yavorcik admitted that he violated five professional-conduct rules with respect to his campaign-finance reports and client representation, and relator moved to dismiss the remaining allegations.

**{¶ 4}** A panel of the board conducted a hearing and issued a report finding that Yavorcik committed the stipulated misconduct and unanimously dismissing nine other alleged rule violations. The panel also recommended that Yavorcik be suspended from the practice of law for two years but that he receive 18 months of credit for the time he had served under his interim suspension and that the remaining six months be stayed on conditions. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No objections have been filed.

**{¶ 5}** We adopt the board's findings of misconduct and agree that a two-year suspension, with credit for the 18 months he had served under his interim suspension and the final six months stayed on the conditions recommended by the board, is the appropriate sanction for Yavorcik's misconduct.

**Misconduct**

*Campaign Contributions*

{¶ 6} Yavorcik was running as a candidate for Mahoning County prosecutor in the 2008 general election when a political consultant recommended that they conduct a poll to evaluate Yavorcik's chances of defeating the incumbent. On March 20, 2008, Yavorcik received a $15,000 check from Flora Cafaro and issued a receipt to "William M. Cafaro/American Gladiator Fitness Center" stating that the $15,000 payment was for services rendered from February 20, 2008, forward. He deposited that check into his business account and then issued a $15,000 check to Global Strategies Group to pay for the poll.

{¶ 7} Yavorcik misrepresented the source of the $15,000 on the campaign-finance report that he filed prior to the general election. Rather than state that Flora Cafaro—whose family was involved in the Oakhill controversy—had contributed the funds, he falsely reported that he had made an in-kind contribution of $15,000 to his campaign. Yavorcik also failed to report Cafaro's payment as income on his 2008 federal tax return and to disclose two additional cash contributions on the campaign-finance report that he filed after the general election. The Ohio Elections Commission found that Yavorcik's conduct violated campaign-finance-reporting laws and fined him $200. In 2014, Yavorcik amended his federal income-tax return and attempted to pay the tax on Cafaro's payment, but the government declined to assess tax on the payment due to the passage of time.

{¶ 8} The parties stipulated and the board found that Yavorcik's misrepresentation and omissions on his campaign-finance reports and income-tax return violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness). We adopt the board's finding of misconduct.

*The Yambar Matter*

**{¶ 9}** Following an August 12, 2013 motor-vehicle accident, Robert E. Yambar retained Yavorcik to pursue personal-injury claims on behalf of himself and his minor son. Although Yambar agreed to settle his son's claim for $10,000, he was unhappy with the offer of the other driver's insurer to settle Yambar's claim for his own injuries. Yavorcik filed a complaint against the other driver and his insurer one day before the applicable statute of limitations expired.

**{¶ 10}** On September 3, 2015, the insurer issued a $10,000 check payable to Yambar, as parent and natural guardian of his son, and Yavorcik deposited the check into his client trust account at PNC Bank. Yavorcik prepared an application to obtain probate-court approval of Yambar's son's settlement, but Yambar never signed it and Yavorcik never submitted it to the court. At some point while Yavorcik was representing himself in his own criminal trial, he transferred Yambar's file to another attorney.

**{¶ 11}** On October 20, 2016, Yambar filed a grievance against Yavorcik. During the ensuing investigation, Yavorcik informed relator's investigator that PNC Bank had closed his client trust account without prior notice. After the account was closed, the bank had issued Yavorcik a check for $4,552.79—which was less than the amount Yavorcik should have held in trust for Yambar's son. On April 30, 2018, Yavorcik sent Yambar two cashiers' checks totaling $10,931.28.

**{¶ 12}** Yavorcik admitted, and the board found, that he failed to keep Yambar reasonably informed about the status of his legal matters and failed to comply as soon as practicable with Yambar's reasonable requests for information, in violation of Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter) and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client). In accord with the parties' stipulations, the board also found that Yavorcik failed to inform Yambar that he did not carry professional-liability insurance of at

4

least $100,000 per occurrence and $300,000 in the aggregate in violation of Prof.Cond.R. 1.4(c) (requiring a lawyer to inform a client if the lawyer does not maintain professional-liability insurance and to obtain a signed acknowledgment of that notice from the client) and failed to hold Yambar's son's settlement funds in his client trust account and to maintain required records regarding those funds in violation of Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from his own property and to maintain certain records regarding the funds held in that account). We adopt these findings of misconduct.

**Sanction**

{¶ 13} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 14} The board found that just one aggravating factor is present: Yavorcik committed multiple offenses. *See* Gov.Bar R. V(13)(B)(4). But it also noted that Yavorcik had damaged the integrity of and the public's confidence in the election system by failing to identify an actual source of his campaign funds.

{¶ 15} In mitigation, the board found that Yavorcik (1) had made a timely, good-faith effort to rectify the consequences of his misconduct by making complete restitution to Yambar almost a year before his disciplinary hearing, (2) had made full and free disclosure to the board, had demonstrated a cooperative attitude toward the proceedings, and had been remorseful for his actions, and (3) had offered five letters attesting to his good character. *See* Gov.Bar R. V(13)(C)(3), (4), and (5). The board also found that other penalties or sanctions had been imposed in that the Ohio Elections Commission had fined Yavorcik for his campaign-finance-reporting violations and he had served a criminal sanction that included one year of house arrest, continuous alcohol and global-positioning-system (GPS) monitoring, and

200 hours of community service—though his convictions were later vacated and related allegations of ethical misconduct had been dismissed by the panel in this case. *See* Gov.Bar R. V(13)(C)(6). The board attributed no aggravating or mitigating effect to Yavorcik's related 32-month interim felony suspension—which remains on his disciplinary record.

{¶ 16} Yavorcik made no effort to establish the existence of a mitigating substance-use disorder under Gov.Bar R. V(13)(C)(7). He did, however, testify that he used alcohol every night to cope with the stress of his criminal trial and that until his convictions were vacated, he was required to attend Alcoholics Anonymous meetings and was subject to random drug testing as conditions of his community-control sanctions. Given that history, the board expressed concern about Yavorcik's testimony that he was continuing to use alcohol approximately once a week—including the night before his disciplinary hearing.

{¶ 17} The board recommends that Yavorcik be suspended from the practice of law for two years with six months stayed but that the time he has served under his interim felony suspension be credited against the first 18 months of that suspension. As conditions for the stay, the board recommends that we require Yavorcik to submit to an assessment conducted by the Ohio Lawyers Assistance Program ("OLAP") or a qualified chemical-dependency professional, comply with any recommendations arising from that assessment, complete six hours of continuing legal education ("CLE") in law-office management, serve one year of monitored probation, and engage in no further misconduct.

{¶ 18} In support of that recommendation, the board cited several cases in which we imposed sanctions ranging from a fully stayed one-year suspension to a two-year suspension with six months conditionally stayed on attorneys who committed some of the same ethical violations that Yavorcik did. For example, in *Columbus Bar Assn. v. McCord*, 150 Ohio St.3d 81, 2016-Ohio-3298, 79 N.E.3d 503, we imposed a conditionally stayed one-year suspension on an attorney who

6

committed illegal acts that adversely reflected on his honesty or trustworthiness by failing to file federal income-tax returns for five years and who failed to inform his clients that he did not maintain professional-liability insurance. McCord also engaged in trust-account violations comparable to Yavorcik's failures to safeguard Yambar's settlement funds and to maintain records regarding the funds held in his client trust account, but there was no allegation that McCord failed to reasonably communicate with a client as Yavorcik did.

{¶ 19} In *Disciplinary Counsel v. Ames*, 147 Ohio St.3d 363, 2016-Ohio-7830, 65 N.E.3d 754, the attorney admitted that he had misappropriated over $8,000 from his late brother's estate—for which he had been convicted of felony theft—and had filed a probate-court document in which he falsely represented that he had obtained his nieces' consent to distribute additional funds to himself. Like Yavorcik, Ames admitted that his conduct adversely reflected on his honesty or trustworthiness, but he also admitted that it violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). *Id*. at ¶ 3. In the presence of multiple mitigating factors and just two aggravating factors, we adopted the parties' consent-to-discipline agreement and suspended Ames for two years with the final six months stayed on conditions, crediting him for the time he had served under a related interim felony suspension.

{¶ 20} Although Yavorcik, McCord, and Ames each engaged in conduct that adversely reflected on their honesty or trustworthiness in violation of Prof.Cond.R. 8.4(b), Yavorcik's conduct is arguably the most egregious of those violations because his actions also served to undermine public confidence in the transparency of our election process by concealing an actual source of his campaign funds. But Yavorcik has already served a 32-month interim felony suspension based on felony convictions that were ultimately vacated on appeal. In recognition

of that sanction, Yavorcik's acknowledgment of his wrongdoing, and his sincere remorse, we agree that a two-year suspension, with 18 months of credit for time served and the final six months stayed on the conditions recommended by the board, is the appropriate sanction in this case.

{¶ 21} Accordingly, Martin Edward Yavorcik is suspended from the practice of law for two years, and the time that Yavorcik has served under our May 2016 interim-felony-suspension order shall be credited against the first 18 months of that suspension. The final six months of the suspension shall be stayed on the conditions that Yavorcik (1) submit to an assessment conducted by OLAP or a qualified chemical-dependency professional within 90 days of our order and comply with any recommendations arising from that assessment, (2) successfully complete a one-year period of monitored probation in accordance with Gov.Bar R. V(21) focused on his law-office practices, including the management of his client trust account, his compliance with Prof.Cond.R. 1.4(c), and his compliance with any recommendations arising from his OLAP/chemical-dependency evaluation, (3) complete six hours of CLE related to client-trust-account and law-office management in addition to the requirements of Gov.Bar R. X, and (4) engage in no further misconduct. If Yavorcik fails to comply with a condition of the stay, the stay will be lifted and he will serve the final six months of the two-year suspension. Costs are taxed to Yavorcik.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

David C. Comstock Jr. and Ronald E. Slipski, Bar Counsel, for relator.

John B. Juhasz, for respondent.

_____