[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Heller*, Slip Opinion No. 2021-Ohio-2211.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2211

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* HELLER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Heller*, Slip Opinion No. 2021-Ohio-2211.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—One-year suspension, with six months stayed on conditions.*

(No. 2020-0742—Submitted January 27, 2021—Decided July 1, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-041.

_____

**Per Curiam.**

{¶ 1} Respondent, Michael Aaron Heller, of Euclid, Ohio, Attorney Registration No. 0073376, was admitted to the practice of law in Ohio in 2001.

{¶ 2} In a January 14, 2020 amended complaint, relator, Cleveland Metropolitan Bar Association, alleged that Heller committed multiple ethical violations related mostly to his handling of a single client's bankruptcy matter and to his supervisory and financial relationship with a nonlawyer who worked in his

office. Heller stipulated to most of the alleged facts and misconduct. After a hearing, a panel of the Board of Professional Conduct found by clear and convincing evidence that Heller had committed 11 of the charged rule violations. The panel unanimously dismissed three other alleged rule violations for insufficient evidence.

{¶ 3} The panel recommended that Heller be suspended from the practice of law for one year with the final six months stayed on conditions, including that upon his reinstatement, he be required to serve a period of monitored probation. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction, with some modifications to the conditions of the stay. Heller objects to the board's findings of misconduct and its recommended sanction.

{¶ 4} For the reasons that follow, we overrule Heller's objections, adopt the board's findings of misconduct and aggravating and mitigating factors, and suspend Heller from the practice of law for one year with six months stayed on the conditions recommended by the board.

**Misconduct**

*Lax Supervision and Improper Fee Sharing with a Nonlawyer*

{¶ 5} Sometime in 2016, Heller, a sole practitioner, hired T.F.[1] to work as an assistant in his law office. In addition to performing general office duties, T.F. met with Heller's clients, prepared bankruptcy petitions and related documents under Heller's supervision, and accepted client payments on Heller's behalf. He also rented a room in Heller's home.

{¶ 6} Heller charged a standard fee of $650 to represent clients from their initial consultation through discharge or final adjudication of their Chapter 7 bankruptcy proceedings, though he often reduced that fee to $599. He typically

---

1. We identify T.F. only by his initials because, although Heller claims that T.F. has committed a crime, it does not appear that he has ever been charged with any offense related to Heller's allegations.

paid T.F. $100 or $150 in cash for each bankruptcy petition that T.F. prepared. He compensated T.F. for his general office work in cash or credit toward T.F.'s rent. However, Heller kept very poor records regarding moneys owed or paid to T.F.

{¶ 7} In December 2016, Heller discovered that T.F. was collecting cash payments from clients but was not keeping accurate records or remitting all of the funds to Heller. Nevertheless, Heller allowed T.F. to continue working as his office assistant, believing that T.F. would repay to the firm any money that he had not properly remitted. By early to mid-2017, however, Heller came to believe that T.F. was stealing money from the law firm. After some internal investigation, Heller estimated that T.F. had embezzled approximately $19,000 from the firm—some of which Heller claimed had been stored in an office safe—but Heller's financial records proved insufficient to establish the exact amount of the loss.

{¶ 8} In November 2017, Heller reported the alleged theft to the Euclid police department. According to Heller, T.F. eventually admitted that he stole some client payments—albeit substantially less than Heller had alleged. There is no evidence that criminal charges were ever brought against T.F., and the Euclid police report states that the case is closed.

{¶ 9} Heller now admits that he exercised extremely poor supervision over T.F. even after he discovered serious irregularities in T.F.'s recordkeeping and handling of client payments.

{¶ 10} On these facts, the parties stipulated and the board found that Heller violated Prof.Cond.R. 5.3(b) (requiring a lawyer to make reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer), 5.3(c)(2) (providing that a lawyer shall be responsible for the conduct of a person over whom the lawyer has direct supervisory authority if that person's conduct would be a violation of the Ohio Rules of Professional Conduct if engaged in by a lawyer, and the lawyer knew of the conduct at a time when its consequences could have been avoided or mitigated but failed to take

reasonable remedial action), and 5.4(a) (prohibiting a lawyer or law firm from sharing legal fees with a nonlawyer, except in certain enumerated circumstances not applicable here). We adopt these findings of misconduct.

*The VanEyk Bankruptcy*

{¶ 11} On March 4, 2017, Melissa VanEyk retained Heller to represent her in a Chapter 7 bankruptcy. She agreed to pay a flat fee of $599 plus court filing fees of $335. Instead of informing her that she may be entitled to a refund of all or part of Heller's fee if he did not complete the representation for any reason, the written fee agreement stated that any refund would be at Heller's sole discretion. By March 17, 2017, VanEyk had made payments totaling $950 to Heller's firm, but Heller did not deposit these payments into his client trust account. Nor did he maintain adequate records regarding the funds that VanEyk (or his other clients) had entrusted to him.

{¶ 12} VanEyk had little or no substantive communication with Heller about her bankruptcy petition. Instead, she spoke with T.F. by telephone and in person regarding the preparation of the petition. She told T.F. that she was in the process of purchasing a Ford Escape from a car dealership owned by her landlord, for which she had made a down payment of $3,000 to $3,500, and she made it clear to T.F. that one of her primary goals in the bankruptcy proceedings was to keep that vehicle. On March 10, 2017, VanEyk purchased and took possession of the vehicle for an agreed purchase price of $4,499.97, plus taxes and fees, and the seller retained a $1,335.72 lien on the vehicle. When VanEyk met with T.F. following her purchase of the vehicle, she explained that she had made a down payment but still owed a balance and reiterated the importance of keeping the vehicle. T.F. told her that he did not think it would be a problem.

{¶ 13} On March 17, 2017, Heller electronically filed VanEyk's Chapter 7 bankruptcy petition without first giving her the opportunity to review it. Even though VanEyk had already paid Heller's $599 attorney fee plus $335 for the

court's filing fee, the bankruptcy petition falsely stated that Heller had received only $300 of his attorney fee and sought the court's permission for VanEyk to pay the filing fee in installments on the ground that she was unable to pay the full filing fee at once. By filing the petition electronically, Heller certified that to the best of his knowledge, the information in the petition and other papers had evidentiary support—and there is no evidence that he ever corrected the misrepresentations contained therein. *See* Fed.R.Bankr.P. 9011(b).

{¶ 14} On March 31, 2017, Heller filed a property schedule in VanEyk's case that identified the Ford Escape as an asset but valued it at approximately $1,200 less than what VanEyk had paid for the vehicle just three weeks earlier. He also failed to identify the seller as a secured creditor on another bankruptcy schedule. Another document filed with the bankruptcy court contained a signature that VanEyk testified was not hers, though Heller presented some circumstantial evidence that T.F. had been the one who forged it.

{¶ 15} Although VanEyk appeared for the first meeting of creditors in late April 2017, the meeting had to be rescheduled because Heller failed to attend. Heller had his first substantive communication with VanEyk regarding her bankruptcy immediately before the second meeting of creditors. At that time, he asked VanEyk whether her landlord was holding $3,000 for her. VanEyk informed him that the $3,000 was the down payment for a vehicle that she had purchased from her landlord's car dealership and that she had already disclosed the purchase to T.F. Heller became angry and told VanEyk that there was no way she would be able to keep the vehicle and if that was her primary goal, they should skip the creditors' meeting, let the bankruptcy court dismiss her case, and then refile the petition. VanEyk accepted Heller's recommendation, and they left without attending the meeting. After they failed to attend a third creditors' meeting, the court dismissed the case for failure to pay the $335 filing fee and ordered VanEyk

to pay the outstanding fee within ten days. However, VanEyk had no knowledge of that order until after she had filed a grievance against Heller.

{¶ 16} Although Heller offered to refile VanEyk's bankruptcy petition, he informed her that she would have to pay the outstanding filing fee *plus* a new filing fee and that they would need to discuss whether he would require additional attorney fees. VanEyk later requested a refund, which Heller ultimately provided. At the time of Heller's disciplinary hearing, she had not refiled her bankruptcy petition.

{¶ 17} At Heller's disciplinary hearing, relator presented the expert testimony of Robert Barr, an experienced bankruptcy attorney and trustee. Barr testified that he had reviewed VanEyk's bankruptcy filings and found that they contained numerous deficiencies and inaccuracies. He opined that Heller did not properly review the documents that VanEyk had given him or properly advise her regarding the bankruptcy proceeding or the likely disposition of the Ford Escape, which could likely have been protected. Based on Barr's testimony and the other evidence admitted at the hearing, the board found that the VanEyk bankruptcy filings were deficient and inaccurate.

{¶ 18} The parties stipulated and the board found that Heller's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.5(d)(3) (prohibiting a lawyer from charging a fee denominated as "earned upon receipt," "nonrefundable," or any similar terms, without simultaneously advising the client in writing that if the lawyer does not complete the representation for any reason, the client may be entitled to a refund of all or part of the fee based on the value of the representation), 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(a)(2) (requiring a lawyer to maintain a record for

each client on whose behalf funds are held), and 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal).

{¶ 19} The board also found that Heller's conduct violated Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished) and 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions about the representation), as charged in the amended complaint.

### Heller's Objections to the Board's Findings of Misconduct

{¶ 20} Heller objects to three of the board's findings of misconduct, arguing that the offenses have not been proven by clear and convincing evidence. For the reasons that follow, we find that these objections are without merit.

{¶ 21} First, Heller argues that relator failed to prove that he *knowingly* made false statements to the bankruptcy court in violation of Prof.Cond.R. 3.3(a)(1). But before his disciplinary hearing, Heller stipulated that (1) VanEyk paid $950 to his law firm, including the $335 filing fee, by March 17, 2017, (2) he stated on VanEyk's bankruptcy petition that he had received only $300 in fees, and (3) he requested permission to pay VanEyk's filing fee in installments because she was unable to pay the fee in full, and that, "[b]y his actions, Heller *knowingly* made false statements to the Bankruptcy Court in violation of [Prof.Cond.R.] 3.3(a)(1)." (Emphasis added.)

{¶ 22} At his disciplinary hearing, Heller sought leave to withdraw his stipulation to a violation of Prof.Cond.R. 3.3(a)(1) on the grounds that he did not have adequate time to review the stipulations and that his misrepresentations to the bankruptcy court were not knowingly made. However, the panel chair denied that motion and declined to hear evidence that contradicted Heller's stipulation, finding that (1) Heller had ample time to review the stipulations, (2) the stipulation was quite clear, and (3) allowing Heller to withdraw the stipulation *after* relator had

rested its case would be unfair to relator. Because Heller was in the best position to know when he acquired the information about VanEyk's payments and waited until after relator rested its case to attempt withdrawal of his stipulation to that fact, we conclude that Heller is bound by his own stipulation that he *knowingly* made false statements to the bankruptcy court in violation of Prof.Cond.R. 3.3(a)(1).

{¶ 23} In his second objection, Heller contends that relator did not present clear and convincing evidence that he "affirmatively" failed to properly deposit client funds into his client trust account in violation of Prof.Cond.R. 1.15(a). Specifically, Heller asserts that it was "implausible" for him to deposit VanEyk's funds because he did not personally receive them or know that T.F. had received them on his behalf. Yet, in the joint stipulations, Heller admitted that he "required that all court filing fees be paid directly to him for subsequent filing with the court," and that "[b]y this policy, [he] took control of VanEyk's fund[s] to be used for this purpose, but then failed to segregate the funds in [a client trust] account for her benefit." He also stipulated that he failed to deposit cash payments from VanEyk and other clients into his client trust account. Further, he testified that he received one $100 payment directly from VanEyk, that he recognized his own handwriting and initials on the receipt, and that he never deposited any funds from VanEyk into his client trust account. These facts constitute clear and convincing evidence that Heller violated Prof.Cond.R. 1.15(a).

{¶ 24} In his third objection, Heller asserts that he complied with the notice requirement of Prof.Cond.R. 1.5(d)(3) because a clause in his written fee agreement with VanEyk states, "Prepaid but unearned fees and/or filing fees advanced by a client but not used will be refunded, less any balance owing." Prof.Cond.R. 1.5(d)(3) prohibits a lawyer from "enter[ing] into an arrangement for, charg[ing], or collect[ing]" a "fee denominated as 'earned upon receipt,' 'nonrefundable,' or in any similar terms, unless the client is simultaneously advised in *writing* that if the lawyer does not complete the representation for any reason, the client may be

8

entitled to a refund of all or part of the fee based upon the value of the representation." (Emphasis sic.)

{¶ 25} Heller's written fee agreement generally states that "[p]repaid but unearned fees * * * will be refunded." But it also provides that Heller has the sole discretion to determine whether a client is entitled to a refund upon the termination of his representation in at least one circumstance. Specifically, the fee agreement states that in the event of termination due to client inactivity for more than 60 days, "there shall be no right to [a] refund of any prepaid fees," though the attorney may "at [the attorney's] sole discretion, issue a partial refund for the portion of fees deemed to be unearned or not reasonably related to the firm's efforts."

{¶ 26} Similarly, a separate document setting forth Heller's policies for bankruptcy matters (and signed by VanEyk the same day that she signed Heller's fee agreement) states that in the event of client delays exceeding 60 days, "*Attorney has full discretion as to whether or not a refund of any type will be issued, determined by the circumstances of the situation.*" (Italics sic.) That document further provides that if the client chooses to terminate the representation, "fees and monies paid *will not be refunded, except by Attorney discretion*." (Italics and boldface sic.) These statements simply do not comport with the notice requirements of Prof.Cond.R. 1.5(d)(3).

{¶ 27} On these facts, we overrule Heller's first three objections and adopt the board's findings of misconduct with respect to the VanEyk matter.

### Recommended Sanction

{¶ 28} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 29} The board found that four aggravating factors are present: Heller acted with a selfish or dishonest motive by collecting the money for and then failing

to pay VanEyk's filing fee, engaged in a pattern of misconduct by failing to properly deposit client funds from VanEyk and other clients into his client trust account, committed multiple offenses, and caused harm to a vulnerable client. *See* Gov.Bar R. V(13)(B)(2), (3), (4), and (8).

{¶ 30} As for mitigating factors, the board found that Heller had no prior discipline in his 19 years of practice, made full restitution to VanEyk (albeit after she had filed a grievance against him), made full and free disclosure to the board and exhibited a cooperative attitude throughout the disciplinary proceedings, and presented evidence of his good character and reputation. *See* Gov.Bar R. V(13)(C)(1), (3), (4), and (5). The board also noted that Heller was remorseful and for the most part accepted responsibility for his actions.

{¶ 31} At his disciplinary hearing, Heller admitted that he is an alcoholic and had recently attended Alcoholics Anonymous ("AA") meetings on a regular basis. Notwithstanding that fact, he did not present any evidence necessary to establish that his addiction qualified as a mitigating factor under Gov.Bar R. V(13)(C)(7).

{¶ 32} After considering these factors and eight cases in which we imposed one- or two-year partially stayed suspensions for similar acts of misconduct, the board recommended that we suspend Heller from the practice of law for one year, with six months stayed on the conditions that he (1) complete additional continuing legal education ("CLE") focused on law-office and client-trust-account management, (2) submit to a drug-and-alcohol assessment conducted by the Ohio Lawyers Assistance Program ("OLAP") and comply with any treatment or counseling recommendations arising from that assessment, (3) pay any additional filing fees, not already refunded, for which VanEyk is responsible upon the refiling of her bankruptcy petition, and (4) commit no further misconduct.

{¶ 33} Additionally, the board recommended that Heller be required to work with a monitor upon his reinstatement to the practice of law to ensure that he implements proper law-office and trust-account management procedures.

**Heller's Objections to the Aggravating Factors and the Weight Attributed to the Aggravating and Mitigating Factors**

{¶ 34} In his fourth through eighth objections, Heller argues that the aggravating factors found by the board are not supported by the evidence and that the board did not attribute sufficient weight to the mitigating factors in this case. For the reasons that follow, we overrule these objections.

{¶ 35} In his fourth objection, Heller argues that his failure to pay VanEyk's filing fee was neither selfish nor dishonest because he did not personally receive, retain, or otherwise benefit from those funds, which he claims were received and embezzled by T.F. But even in this objection, Heller admits that he failed to adequately supervise T.F. and that his bookkeeping practices were flawed. And Heller was aware that T.F. was embezzling or, at a minimum, mishandling client funds as early as December 2016, but he placed his own needs and desires above those of his clients by allowing T.F. to continue working in his legal office without confronting him about his conduct, providing additional supervision, or implementing *any* additional procedures to protect his clients from such actions going forward. For these reasons, we find that the record supports the board's finding that Heller acted with a selfish or dishonest motive.

{¶ 36} In his fifth and sixth objections, Heller contends that although he was charged with multiple counts of misconduct, there was no showing that he committed multiple offenses or engaged in a pattern of misconduct. But Heller has been found to have committed 11 violations of the Rules of Professional Conduct arising from his employment of T.F. and his representation of VanEyk. We have previously found that misconduct that results in two or more rule violations is sufficient to support a finding that an attorney committed multiple offenses. *See,*

*e.g.*, *Erie-Huron Cty. Bar Assn. v. Bailey and Bailey*, 161 Ohio St.3d 146, 2020-Ohio-3701, 161 N.E.3d 590, ¶ 40. Moreover, the record plainly demonstrates that Heller engaged in patterns of misconduct by improperly sharing legal fees from multiple cases with a nonlawyer and failing to deposit payments for attorney and filing fees into his client trust account even after this disciplinary case was filed against him. These facts amply support the board's findings that Heller committed multiple violations and engaged in patterns of misconduct.

{¶ 37} In his seventh objection, Heller challenges the board's finding that he caused harm to a vulnerable client, arguing that because he made full restitution to VanEyk, any harm that she suffered was the direct result of her choice not to refile her bankruptcy petition. However, we find that Heller caused VanEyk significant stress and frustration, deprived her of the protections that she sought from the bankruptcy court, and left her with the burden of an additional $335 debt at a time when she was already struggling financially.

{¶ 38} Heller's eighth objection challenges the weight that the board assigned to the relevant aggravating and mitigating factors in this case. We acknowledge that Heller submitted 22 letters, including 4 from fellow attorneys and 15 from satisfied clients, that generally attest to his good character, reputation, and skill as an attorney. Two of those letters also note that Heller has provided legal services to people with limited resources who might otherwise have had no access to counsel. However, we agree with the board's assessment that those letters and the other mitigating factors are insufficient to overcome the gravity of Heller's misconduct and the significant aggravating factors that are present in this case.

{¶ 39} On these facts, we overrule Heller's fourth through eighth objections.

**Heller's Objections to the Recommended Sanction**

{¶ 40} In his ninth and tenth objections, Heller challenges the board's recommended sanction. In addition to arguing that the cases on which the board

relied to support its recommended sanction are distinguishable from the facts of this case and that a fully stayed suspension is the appropriate sanction for his misconduct, Heller asserts that he should not be required to submit to an OLAP evaluation because there has been no showing that his alcohol use contributed to his misconduct or otherwise affected his practice of law.

{¶ 41} In determining the appropriate sanction for Heller's misconduct, the board considered cases in which we have imposed one- or two-year suspensions, with some portion of the suspension conditionally stayed, for comparable acts of misconduct. In three of those cases, we imposed one-year suspensions with six months conditionally stayed on attorneys who, among other things, made false statements to a court. *See Toledo Bar Assn. v. Miller*, 132 Ohio St.3d 63, 2012-Ohio-1880, 969 N.E.2d 239 (attorney made false statements on behalf of his employer in an action seeking to garnish his wages, made false statements regarding his income in his pending bankruptcy proceeding, and used funds belonging to a client of his firm to pay a filing fee on behalf of a non-firm pro bono client); *Disciplinary Counsel v. Schuman*, 152 Ohio St.3d 47, 2017-Ohio-8800, 92 N.E.2d 850 (attorney made false statements and submitted a fraudulently altered document in order to collect a clearly excessive guardian-ad-litem fee); *Disciplinary Counsel v. Simonelli*, 113 Ohio St.3d 215, 2007-Ohio-1535, 863 N.E.2d 1039 (attorney made false statements in documents filed in two bankruptcy proceedings, improperly shared legal fees with nonlawyers in those proceedings, and neglected two clients' legal matters).

{¶ 42} Heller attempts to distinguish *Miller*, *Schuman*, and *Simonelli* on the ground that those attorneys made knowing misrepresentations to a court and that he did not. But we have already found that Heller is bound by his stipulation that he knew that his statements to the bankruptcy court were false when he made them. Furthermore, Heller offers no precedent to support his contention that a fully stayed suspension is appropriate on the facts of this case.

{¶ 43} Having independently reviewed the record in this case, we are convinced that Heller's misconduct and the relevant aggravating and mitigating factors are most comparable to those of the cases in which we have imposed one-year suspensions with six months conditionally stayed and therefore overrule his objection.

{¶ 44} We also find that there is ample evidence to support the board's recommendation that Heller be required to submit to an OLAP evaluation and comply with any recommendations arising from that assessment. Heller admitted that (1) he is an alcoholic, (2) he was convicted of driving under the influence of alcohol in December 2017,[2] and (3) he has continued to drink periodically, despite having regularly participated in AA for the two and a half years leading up to his disciplinary proceeding. *See, e.g.*, *Mahoning Cty. Bar Assn. v. Yavorcik*, 158 Ohio St.3d 436, 2020-Ohio-123, 144 N.E.3d 413, ¶ 16, 21 (requiring an attorney to submit to an OLAP evaluation after he testified that he had used alcohol every night to cope with the stress of his criminal trial); *Mahoning Cty. Bar Assn. v. Sciortino*, 155 Ohio St.3d 457, 2018-Ohio-4961, 122 N.E.3d 139, ¶ 20-24 (requiring an attorney, over his objection, to submit to an OLAP evaluation based on his testimony that he had a problem with alcohol and the absence of sufficient evidence to corroborate his testimony that he had achieved sobriety). We therefore overrule Heller's final objections and adopt the sanction recommended by the board.

**Conclusion**

{¶ 45} Accordingly, Michael Aaron Heller is suspended from the practice of law in Ohio for one year, with six months stayed on the conditions that he (1) complete, within six months of this order, six hours of CLE in law-office and client-trust-account management in addition to the requirements of Gov.Bar R. X, (2)

---

2. The hearing panel unanimously dismissed two alleged rule violations related to Heller's November 2017 conviction for driving under the influence.

submit to a drug-and-alcohol assessment conducted by OLAP (which shall be instructed to consider whether his current participation in AA is sufficient to maintain his sobriety) and comply with any treatment or counseling recommendations arising from that assessment, (3) pay the outstanding filing fee for VanEyk's 2017 bankruptcy filing, and (4) commit no further misconduct. If Heller fails to comply with any condition of the stay, the stay will be lifted and he will serve the entire one-year suspension. Upon reinstatement to the practice of law, Heller shall be required to work with a monitor appointed by relator for a period of six months to ensure that he implements proper law-office and client-trust-account management procedures. Costs are taxed to Heller.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by BRUNNER, J.

––––––––––––––––

**DONNELLY, J., dissenting.**

{¶ 46} I respectfully dissent from the majority opinion regarding its decision to suspend respondent, Michael Heller, from the practice of law for one year with six months stayed on conditions. I believe that a fully stayed suspension would be more appropriate in light of the particular circumstances at play in this case.

{¶ 47} I do not dispute that the case law cited in the majority opinion indicates that an attorney's violation of Prof.Cond.R. 3.3(a)(1) for knowingly making a false statement of law or fact to a tribunal usually merits an actual suspension from the practice of law. But like any attorney-discipline case, the severity of the violation or violations of the Rules of Professional Conduct and the appropriate corresponding sanction lies on a spectrum. A violation of Prof.Cond.R. 3.3(a)(1) does not always require an actual suspension.

**{¶ 48}** In the face of mitigating evidence or in certain unique circumstances, this court has imposed fully stayed suspensions for misconduct that included violations of Prof.Cond.R. 3.3(a)(1). *See Medina Cty. Bar Assn. v. Cameron*, 130 Ohio St.3d 299, 2011-Ohio-5200, 958 N.E.2d 138 (imposing a fully stayed one-year suspension on an attorney who directly contacted an opposing party instead of contacting the party's attorney and then falsely averred to a court that he had reached a settlement with the opposing party; mitigating factors included a lengthy career with no prior discipline and limited harm ultimately resulting from the misconduct); *Disciplinary Counsel v. Harmon*, 158 Ohio St.3d 248, 2019-Ohio-4171, 141 N.E.3d 142 (imposing a fully stayed two-year suspension on an attorney who, in addition to six other violations of the Rules of Professional Conduct, falsely stated to a magistrate that his client had been kidnapped; mitigating factors included a lengthy career with no prior discipline and numerous letters attesting to the attorney's good character).

**{¶ 49}** This court has even imposed public reprimands instead of a suspension for violations of Prof.Cond.R. 3.3(a)(1) in certain exceptional circumstances. *See Warren Cty. Bar Assn. v. Clifton*, 147 Ohio St.3d 399, 2016-Ohio-5587, 66 N.E.3d 713 (publicly reprimanding an attorney who altered a client's will before submitting it to probate; mitigating factors included the absence of prior discipline, cooperation with the disciplinary process, and the fact that the misconduct did not change the outcome of the probate proceedings); *Disciplinary Counsel v. Wilson*, 142 Ohio St.3d 439, 2014-Ohio-5487, 32 N.E.3d 426 (publicly reprimanding an attorney who forged a client's signature on an affidavit, notarized the document, and instructed the client to tell the magistrate that the client had signed the affidavit; mitigating factors included the absence of prior discipline, cooperation with the disciplinary process, and evidence of the attorney's good character).

{¶ 50} This case does not involve exceptional circumstances that merit the absolute minimum sanction, but it does involve circumstances that warrant a fully stayed suspension, similar to the stayed suspensions imposed in *Cleveland Metro. Bar Assn. v. Thomas*, 125 Ohio St.3d 24, 2010-Ohio-1031, 925 N.E.2d 959, and *Disciplinary Counsel v. Henderson*, 95 Ohio St.3d 129, 2002-Ohio-1756, 766 N.E.2d 590. In *Thomas*, the attorney filed a misleading document regarding attorney fees in a client's bankruptcy proceeding. Thomas also neglected another client's personal-injury proceedings by failing to appear for the final pretrial conference and the trial and failing to inform the client of the dismissal of her case. Thomas's own counsel in the subsequent disciplinary proceedings explained to the client, months later, that the case had been dismissed and that she could still refile within the statute-of-limitations period. This court determined that a fully stayed six-month suspension was warranted after considering Thomas's mitigating evidence, including his lack of prior discipline and his cooperation in the disciplinary process.

{¶ 51} In *Henderson*, the attorney used letterhead that falsely implied that he and another attorney were partners in a firm, and he made false statements to a court regarding the fees he intended to charge two clients in a bankruptcy proceeding. Henderson also violated four other disciplinary rules by failing to reimburse his clients' relatives more than $6,000 for the costs of a trial transcript after recovering those costs from a settlement award. This court rejected the board's recommendation to suspend Henderson from the practice of law for one year with six months stayed and instead imposed a fully stayed six-month suspension in light of the fact that he did not conceal the fees that he ultimately received in the bankruptcy case and had no record of prior discipline.

{¶ 52} As in *Thomas* and *Henderson*, Heller should receive a suspension that is fully stayed. However, because his overall misconduct involves more rule

SUPREME COURT OF OHIO

violations than the foregoing cases, a one-year—rather than a six-month—stayed suspension is appropriate.

{¶ 53} Heller's violations of the Rules of Professional Conduct are all founded in disorganization, inattention, and mismanagement rather than fraud or deception. Intervention is necessary here, and both the public and Heller will benefit from the conditions of his stayed suspension, including involvement with the Ohio Lawyers Assistance Program and supplemental continuing-legal-education courses in law-office and client-trust-account management, as well as the involvement of a monitoring attorney. Such measures will help Heller achieve greater stability in his law practice while also ensuring that he strictly observes the standards of professional conduct. We should not include measures that would serve only to further destabilize Heller and his practice, and I believe that a six-month actual suspension will do just that.

{¶ 54} Because I would fully stay Heller's one-year suspension, I dissent.

BRUNNER, J., concurs in the foregoing opinion.

_____

McDonald Hopkins, L.L.C., R. Jeffrey Pollock, and Sarah M. Mancuso; and Heather M. Zirke, Bar Counsel, and Kari L. Burns, Assistant Bar Counsel, for relator.

Michael Aaron Heller, pro se.

_____