[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Wilson,* Slip Opinion No. 2014-Ohio-5487.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-5487

DISCIPLINARY COUNSEL *v.* WILSON.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Wilson,* Slip Opinion No. 2014-Ohio-5487.]

*Attorneys—Misconduct—Notarization of signature on affidavit without indicating that attorney signed for affiant with affiant's permission—Public reprimand.*

(No. 2014-0548—Submitted May 28, 2014—Decided December 23, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-018.

_____

**Per Curiam**.

{¶ 1} Respondent, Jesslyn Chesterfield Wilson of Cleveland, Ohio, Attorney Registration No. 0029002, was admitted to the practice of law in Ohio in 1982.

{¶ 2} On February 26, 2013, relator, disciplinary counsel, filed a complaint alleging that Wilson had violated multiple Rules of Professional

Conduct by signing the name of her granddaughter's mother to an affidavit, notarizing the document without noting that she had signed it with the affiant's authorization, and then filing the document in a guardianship proceeding that was pending in the Cuyahoga County Probate Court. Wilson waived the probable-cause review of the complaint.

{¶ 3} The parties entered into stipulations of fact and agreed that Wilson's conduct violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The panel adopted those findings and found that Wilson's conduct also violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). The panel, however, recommended that we dismiss an alleged violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Having considered Wilson's conduct, the aggravating and mitigating factors present, and the sanctions we have imposed for comparable misconduct, the panel recommended that we publicly reprimand Wilson for her misconduct. The board adopted the panel report in its entirety. Neither party has filed objections to the board's report.

{¶ 4} We adopt the board's findings of fact and misconduct and publicly reprimand Wilson.

## Misconduct

{¶ 5} On February 1, 2012, Suzanne Turner filed in the Cuyahoga County Probate Court an application to be appointed as the guardian for her grandchild, whose parents are Turner's daughter, Danielle, and Wilson's son, Sean.[1]

---

[1] At the hearing, Wilson testified that both Danielle and Sean have developmental disabilities.

Attached to the application was a waiver of notice and consent to the guardianship, signed by Danielle.

{¶ 6} On Saturday, February 25, 2012, Wilson found an unopened letter from the Cuyahoga County Probate Court, addressed to Sean. She opened the letter and found a notice for a February 28, 2012 hearing on Turner's application for guardianship.

{¶ 7} After talking to Danielle by telephone, she concluded that Danielle wanted her to oppose the guardianship on Danielle's behalf. Wilson, therefore, prepared a motion to deny the application, a brief in opposition, and a sworn affidavit for Danielle's signature. On February 26, she gave Sean a copy of the motion and affidavit and asked him to obtain Danielle's signature. The next day, when she had not received the executed affidavit back from Danielle, she sent Danielle a text message seeking permission to sign the document on Danielle's behalf. Danielle responded to the request with a text message saying, "k", which Wilson interpreted to be the approval (or "ok") to sign her name. Wilson then sent Danielle a text message stating, "I'll sign ur name on copy I have Just say u signd when magistrate asks if u signd".

{¶ 8} Wilson signed Danielle's name on the affidavit and notarized that signature without indicating that the signature was not Danielle's or that the signature was made with text-message authorization. Moreover, the notary jurat falsely stated that it was "SWORN to and subscribed before me this 27th day of February, 2012, by Danielle S. Turner." Respondent filed the motion to deny the guardianship application, the brief in opposition, and the sworn affidavit in the probate court later that day.

{¶ 9} After Wilson filed the documents, Danielle sent her a text message indicating that she was conflicted about the guardianship. The parties stipulated that in light of this fact, Wilson told Danielle that she would attend the hearing to withdraw the motion. The board noted, however, that Wilson testified that on the

afternoon she filed the documents in the probate court, she received a text message from Danielle's sister, saying, essentially, "Mrs. Wilson, do not file that, Danielle is playing both sides, and she's—and my mother is going to try to get you in trouble." Wilson stated that after she realized that Turner, the other grandmother who was seeking the guardianship, had discovered the text message and brought it to the court's attention, she sent Danielle another text message advising her that she was going to withdraw the motion. When Wilson appeared at the hearing, however, she was informed that the application had been dismissed for lack of jurisdiction.

{¶ 10} On these facts, the board found that Wilson knowingly made a false statement of fact to a tribunal in violation of Prof.Cond.R. 3.3(a)(1), engaged in dishonesty, fraud, deceit, or misrepresentation in violation of Prof.Cond.R. 8.4(c), and engaged in conduct that is prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d). However, the board recommends that we dismiss an alleged violation of Prof.Cond.R. 8.4(h), finding that no evidence was offered to prove that Wilson's conduct was so egregious as to warrant an additional finding that it adversely reflects on her fitness to practice law.

{¶ 11} We adopt the board's findings that Wilson's conduct violated Prof.Cond.R. 3.3(a)(1), 8.1(c), and 8.4(d) and dismiss the alleged violation of Prof.Cond.R. 8.4(h).

### Sanction

{¶ 12} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 13}** The board adopted the parties' stipulated factors in mitigation— that Wilson does not have a prior disciplinary record, has demonstrated a cooperative attitude toward the disciplinary process, and has submitted evidence of her good character and reputation in the legal community apart from the charged misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). The only aggravating factor found by the board was a dishonest or selfish motive. *See* BCGD Proc.Reg. 10(B)(1)(b).

**{¶ 14}** Wilson argued that a public reprimand is the appropriate sanction for her misconduct here. In support of that sanction, she cited *Disciplinary Counsel v. Mezacapa*, 101 Ohio St.3d 156, 2004-Ohio-302, 803 N.E.2d 397 (publicly reprimanding an attorney who notarized his own signing of the client's name on an affidavit without noting on the document that he had obtained permission to sign it on the client's behalf). She also noted that this is the first time she has been charged with misconduct in her 33½ years of practice; that her actions were driven by her concern for her grandchild's welfare; and that her conduct caused no actual harm because the court in which the document was filed did not have jurisdiction over the matter, and but for the court's dismissal on that ground, she would have withdrawn the motion herself.

**{¶ 15}** While acknowledging that an improper notarization alone typically warrants only a public reprimand, relator argued that in addition to the improper notarization of the affidavit, Wilson also sent a text message to Danielle instructing her to tell the magistrate that she had signed the document. Based on this additional act, relator argued that the appropriate sanction for Wilson's misconduct is a six-month suspension, all stayed on the condition that she engage in no further misconduct. Of the cases cited by relator, the board found *Disciplinary Counsel v. Shaffer*, 98 Ohio St.3d 342, 2003-Ohio-1008, 785 N.E.2d 429, and *Lake Cty. Bar Assn. v. Speros*, 73 Ohio St.3d 101, 652 N.E.2d 681 (1995), to be most instructive.

{¶ 16} The client in *Shaffer* sought to transfer real property on behalf of his grandmother, who was incapacitated by a stroke and purportedly needed the sale proceeds to meet her living expenses. *Shaffer* at ¶ 3. The client had previously sold other parcels of her property pursuant to what he believed to be his authority under a 1993 power of attorney. *Id.* at ¶ 2. Shaffer discovered, however, that the 1993 power of attorney expressly prohibited his client from transferring property on his grandmother's behalf and asked whether she could execute a new power of attorney. *Id.* at ¶ 3-4. Shaffer visited the grandmother in June 1999 and determined that she was not capable of executing a new power of attorney, so he instructed his client to sign the grandmother's name on the signature line of a new power of attorney that bore the date June 19, 1997. *Id.* at ¶ 5. He later had his secretary sign the backdated document as a witness and assisted the client in transferring the grandmother's real property. *Id.* at ¶ 6. In light of Shaffer's participation in this fraudulent scheme, which was aided by his false notarization, we suspended Shaffer for one year, but stayed the final six months on the condition that he commit no further misconduct. *Id.* at ¶ 7, 13-14.

{¶ 17} And in *Speros*, we imposed a six-month suspension for an attorney who prepared an affidavit falsely suggesting that his failure to timely file a brief on behalf of a client was the result of a clerical error, signed as the affiant, and then falsely notarized the document, signing the name of a secretary/notary at his firm without her authorization. *Speros* at 102-103.

{¶ 18} Here, the board noted that Wilson gave two conflicting statements regarding her actions and intentions after she filed the motion opposing the guardianship. In her May 4, 2012 response to relator's letter of inquiry, she stated that it was her intention to withdraw the motion once she knew that Danielle did not wish to contest the guardianship. At the hearing, however, Wilson testified that it was the texts from Danielle's sister advising her that Turner had discovered the text message instructing Danielle to claim the signature as her own that led her

to seek dismissal of the motion. Based on this testimony, the board concluded that but for Turner's discovery of the text messages, the false notarization would have gone undetected. Nonetheless, finding that Wilson's judgment was clouded by her familial involvement with the case, the board concluded that her conduct was more comparable to that of the respondents in our cases involving a single false notarization and recommended that we publicly reprimand Wilson for her misconduct.

{¶ 19} Like the board, we find that Wilson's conduct is distinguishable from the conduct at issue in *Shaffer* and *Speros*. While Shaffer and Speros were aware that the signatures they notarized were unauthorized and fraudulent, Wilson, in contrast, signed Danielle's name with authorization but failed to indicate that on the document itself. And although her instruction for Danielle to acknowledge the authorized signature as her own was clearly improper, it does not rise to the level of an attempt to fraudulently to pass off an unauthorized signature as genuine, as Shaffer and Speros did. Because we conclude that Wilson's conduct is most comparable to that in *Mezcapa*, we agree that a public reprimand is the appropriate sanction here.

{¶ 20} Accordingly, we publicly reprimand Jesslyn Chesterfield Wilson for the misconduct described herein. Costs are taxed to Wilson.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Donald M. Sheetz, Assistant Disciplinary Counsel, for relator.

Jesslyn Chesterfield Wilson, pro se.

_____