**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Billingsley*, **Slip Opinion No. 2024-Ohio-222.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-222

DISCIPLINARY COUNSEL *v.* BILLINGSLEY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Billingsley*, Slip Opinion No. 2024-Ohio-222.]**

*Attorneys—Misconduct—Violation of Prof.Cond.R. 8.4(c) by notarizing affidavit under false jurat that stated affidavit was sworn to and subscribed in attorney's presence when it was not—Public reprimand.*

(No. 2023-0976—Submitted September 12, 2023—Decided January 25, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-051.

_____

**Per Curiam.**

{¶ 1} Respondent, Lon'Cherie' Darchelle Billingsley, of Cleveland, Ohio, Attorney Registration No. 0089450, was admitted to the practice of law in Ohio in 2012.

**{¶ 2}** In a December 2022 complaint, relator, disciplinary counsel, alleged that Billingsley engaged in a single act of dishonesty, fraud, deceit, or misrepresentation by notarizing an affidavit under a jurat stating that the affidavit had been sworn to and subscribed in her presence when it had not. Billingsley waived a probable-cause determination, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Following the hearing, the panel issued a report finding that Billingsley had committed the charged misconduct and recommending that she be publicly reprimanded. No objections have been filed.

**{¶ 3}** For the reasons that follow, we adopt the board's finding of misconduct and publicly reprimand Billingsley.

## Misconduct

**{¶ 4}** In August 2021, Billingsley's employer, Tyresha Brown-O'Neal, represented Shawnte and Lavelle Gibson, a married couple, in a juvenile-court case involving their children, S.H. and G.G. Shawnte is the mother of both children, and Lavelle is the father of G.G.

**{¶ 5}** In November 2021, Brown-O'Neal emailed an affidavit to Eddie Hanson, the father of S.H., who allegedly was seeking to recant prior statements about conditions in the Gibsons' home and Shawnte's parenting. Ten days later, Brown-O'Neal informed Billingsley that she had witnessed Hanson sign the affidavit electronically during a video conference, and Billingsley agreed to notarize Hanson's purported signature. The notary jurat on the affidavit stated, "Sworn to and subscribed in my presence on this 29th day of November, 2021." Even though she had not in fact witnessed Hanson sign the affidavit, Billingsley notarized it. The board therefore determined that the notary jurat was false.

**{¶ 6}** On December 1, 2021, Brown-O'Neal filed the affidavit in support of the Gibsons' emergency motion to terminate the juvenile court's prior orders awarding emergency temporary custody of S.H. and G.G. to Hanson and the

Cuyahoga County Division of Children and Family Services, respectively. Two days later, Billingsley appeared on behalf of the Gibsons at a pretrial hearing before Magistrate Eleanore E. Hilow. Before that hearing commenced, Hanson's counsel informed the magistrate that Brown-O'Neal had contacted Hanson without her permission and that she had not been served with a copy of Brown-O'Neal's emergency-custody motion. Hanson's counsel further stated that Hanson did not recognize the affidavit that was filed with that motion as the affidavit he had signed and that Billingsley had not been present when he signed the affidavit that Brown-O'Neal had sent him.

{¶ 7} During Billingsley's disciplinary hearing, Magistrate Hilow testified that she had asked Billingsley whether she had notarized Hanson's affidavit and that Billingsley admitted that she had notarized the document without witnessing Hanson sign it. Magistrate Hilow testified that she was under the impression that Billingsley had notarized the affidavit on Brown-O'Neal's instruction. She stated that she struck the emergency motion from the record because it was improperly filed and not served on anyone. She also explained that she struck the affidavit from the record because Hanson had said that it was not the document he had approved and signed and because Billingsley had admitted that she did not see Hanson sign the affidavit.

{¶ 8} The board found that Billingsley was a zealous advocate on her own behalf and made many arguments in her defense at the hearing before the panel. Billingsley initially argued that she had notarized the affidavit at the direction of her supervising attorney, Brown-O'Neal, but then suggested that the in-person requirement for notarization had been suspended because of COVID-19; she also claimed that the law regarding the notarization of documents was confusing at that time. At various points during her disciplinary hearing, Billingsley claimed that her conduct was not wrong but was careless and that she did not draft the jurat stating that the affidavit was signed in her presence. She suggested that the affidavit

was unimportant because it supported only the Gibsons' request for a hearing. She also suggested that the underlying juvenile-court case was highly emotional and that the magistrate was already displeased with her office and her client's conduct.

{¶ 9} However, Billingsley eventually admitted her error:

> So I own it. I absolutely own it. I know now that I did not follow the requirements for a remote online notary. I know that the jurat was incorrect. I know that I signed when Eddie Hanson was not physically or virtually present in front of me. I know that. And that is why I took remedial measures, because I know that what I did was wrong, and the reasoning is why I'm here before you so that you understand why I did it, but I did do it, your Honors. I did. I absolutely did.

{¶ 10} As the hearing progressed, Billingsley more forthrightly conceded her error and eventually acknowledged that she made a misrepresentation in notarizing the affidavit. Yet she maintained that her conduct was not willful and that it did not violate Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The board, however, found that Billingsley's placement of her notarial signature on the affidavit under the false jurat constituted a willful misrepresentation. The board found by clear and convincing evidence that Billingsley's conduct violated Prof.Cond.R. 8.4(c). We adopt this finding of misconduct.

### Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 12}** The board found that one aggravating factor is present here— Billingsley caused harm to vulnerable persons because the affidavit was stricken from the record and further proceedings were necessary to address the issues raised in the emergency motion. *See* Gov.Bar R. V(13)(B)(8). As for mitigating factors, the board found that Billingsley had a clean disciplinary record, had not acted with a dishonest or selfish motive, had made full and free disclosure to the board and exhibited a cooperative attitude toward the proceedings, and had submitted letters from two attorneys attesting to her good character. *See* Gov.Bar R. V(13)(C)(1), (2), (4), and (5). The board also attributed mitigating effect to the fact that Billingsley had attended a class and obtained authorization to serve as an online notary public shortly after the magistrate struck the emergency motion and affidavit from the record in the underlying juvenile-court case. *See* R.C. 147.60(J); Ohio Adm.Code 111:6-1-01(O).

**{¶ 13}** In determining the appropriate sanction to recommend for Billingsley's misconduct, the board considered two cases that she had cited in support of her contention that no sanction was warranted for her misconduct. In *Disciplinary Counsel v. Freedman*, 110 Ohio St.3d 284, 2006-Ohio-4480, 853 N.E.2d 291, Freedman asked an associate attorney in his office to notarize his signatures on a mortgage and deed. *Id*. at ¶ 4. The associate notarized the documents without realizing that the jurat indicated that she was notarizing the signatures of Freedman *and* Freedman's wife, whose signature lines remained blank. *Id*. After the documents had been notarized, Freedman signed his wife's name to them. *Id*. at ¶ 5. At her disciplinary hearing, Billingsley noted that we imposed discipline on Freedman, the attorney who sought the improper notarization, but did not impose any discipline on the associate attorney who had carelessly notarized the documents. But *Freedman* is distinguishable from this case in that the associate mistakenly believed she was notarizing the signature *only* of

Freedman, who had appeared before her, whereas here, Billingsley knowingly notarized the signature of a person who had *not* appeared before her.

**{¶ 14}** In addition, Billingsley noted that in *Mahoning Cty. Bar Assn. v. Macejko*, 166 Ohio St.3d 503, 2022-Ohio-322, 187 N.E.3d 532, we declined to discipline an attorney who prenotarized several documents, one of which was later signed outside his presence. Macejko prenotarized estate-planning documents before traveling to his clients' home to review the documents and obtain their signatures. *Id*. at ¶ 6 (lead opinion). When he arrived at the clients' home, Macejko was informed that one of them was unwell. *Id*. at ¶ 7 (lead opinion). He left the documents for their review with the expectation that they would arrange another meeting to sign the documents, but that meeting never occurred and the clients eventually obtained new counsel. *Id*. at ¶ 7-8 (lead opinion). Macejko later discovered that a durable power of attorney that he had prepared and prenotarized for one of the clients was signed outside his presence. *Id*. at ¶ 10 (lead opinion). Upon being informed of that fact, Macejko self-reported his conduct to the local bar association. *Id.* (lead opinion).

**{¶ 15}** In a split decision, this court dismissed the case against Macejko, with three justices finding that he had not willfully engaged in dishonesty, fraud, deceit, or misrepresentation by prenotarizing the documents, because he had always intended that his clients would execute them in his presence. *Id*. at ¶ 22-24 (lead opinion); *id.* at ¶ 25, 27 (Kennedy, J., concurring). One justice concurred in judgment only. And three dissenting justices would have found that Macejko's conduct violated Prof.Cond.R. 8.4(c); they would have publicly reprimanded him by finding that regardless of his intention, his actions in prenotarizing the documents created a risk that the power of attorney could be used for an unlawful purpose. *Id*. at ¶ 41 (Brunner, J., dissenting).

**{¶ 16}** This case is distinguishable from *Freedman* and *Macejko* because we have found by clear and convincing evidence that Billingsley, knowing that the

6

affiant had not appeared before her, engaged in a willful misrepresentation of fact by placing her notarial signature under a jurat falsely stating that the document had been "[s]worn to and subscribed in [her] presence."

{¶ 17} At the disciplinary hearing, relator argued that Billingsley should receive a fully stayed six-month suspension for her misconduct because she had failed to acknowledge the wrongfulness of her conduct. But the board made no such finding. Instead, the board considered ten cases in which we publicly reprimanded attorneys for similar ethical violations resulting from the improper notarization of documents.

{¶ 18} In four of the cases considered by the board, we publicly reprimanded attorneys who, like Billingsley, notarized documents that were signed outside their presence. *See Cincinnati Bar Assn. v. Gottesman*, 115 Ohio St.3d 222, 2007-Ohio-4791, 874 N.E.2d 778, ¶ 1, 3, 7; *Mahoning Cty. Bar Assn. v. Melnick*, 107 Ohio St.3d 240, 2005-Ohio-6265, 837 N.E.2d 1203, ¶ 2, 4-6, 17; *Columbus Bar Assn. v. Dougherty*, 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094, ¶ 1, 6-8, 17; *Disciplinary Counsel v. Simon*, 71 Ohio St.3d 437, 438, 644 N.E.2d 309 (1994). In two of those cases, it was later determined that the notarized signatures were forgeries. *See Gottesman* at ¶ 3; *Dougherty* at ¶ 8. And in *Cincinnati Bar Assn. v. Thompson*, 129 Ohio St.3d 127, 2011-Ohio-3095, 950 N.E.2d 550, we publicly reprimanded an attorney who notarized unsigned documents at the request of his former law partner. *Id.* at ¶ 1, 3, 9.

{¶ 19} In four of the ten cases considered by the board, we publicly reprimanded attorneys who signed the name of another person with that person's authorization and then notarized that signature without indicating that fact on the face of the document. *See Disciplinary Counsel v. Moore*, 149 Ohio St.3d 509, 2017-Ohio-883, 75 N.E.3d 1252, ¶ 2-4, 8-9; *Disciplinary Counsel v. Wilson*, 142 Ohio St.3d 439, 2014-Ohio-5487, 32 N.E.3d 426, ¶ 2, 4, 7-8, 20; *Disciplinary Counsel v. Flowers*, 139 Ohio St.3d 338, 2014-Ohio-2123, 11 N.E.3d 1174, ¶ 1, 6;

*Disciplinary Counsel v. Mezacapa*, 101 Ohio St.3d 156, 2004-Ohio-302, 803 N.E.2d 397, ¶ 2, 5. Like Billingsley, three of those attorneys caused (or allowed) the falsely notarized documents to be filed in court. *See Moore* at ¶ 4; *Wilson* at ¶ 8; *Mezacapa* at ¶ 2.

**{¶ 20}** And in the final case considered by the board, *Columbus Bar Assn. v. Craig*, 131 Ohio St.3d 364, 2012-Ohio-1083, 965 N.E.2d 287,[1] an attorney forged a client's signature on an affidavit of transfer on death, notarized the forged signature, and filed the document in the county recorder's office. *Id.* at ¶ 1. Craig stipulated that in addition to engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, he also violated rules that required him to keep his client reasonably informed about the status of the client's matter and prohibited him from making false statements of material fact or law. *Id*. at ¶ 3. Despite those additional rule violations, and in the presence of mitigating factors nearly identical to those in this case, we adopted the parties' consent-to-discipline agreement and publicly reprimanded Craig for his misconduct. *Id*. at ¶ 4-6.

**{¶ 21}** The board ultimately concluded that Billingsley's misconduct in this case was no more egregious than the misconduct at issue in those cases. It therefore recommended that we publicly reprimand Billingsley for her misconduct.

**{¶ 22}** We have admonished that "lawyers must not take a cavalier attitude toward their notary responsibilities" by acknowledging the signatures of people who have not appeared before them. *Lorain Cty. Bar Assn. v. Papcke*, 81 Ohio St.3d 91, 93, 689 N.E.2d 549 (1998). In this case, we find that Billingsley did not forge a signature, know of a forgery, or engage in deceit or other misconduct beyond failing to witness a signature, as required of a notary. *See Dougherty*, 105

---

1. The board identifies the case as "*Warren Cty. Bar Assn. v. Craig*, 131 Ohio St.3d 338, 2012-Ohio-1083." But the cite 2012-Ohio-1083 is assigned to *Columbus Bar Assn. v. Craig*, 131 Ohio St.3d 364, 2012-Ohio-1083, 965 N.E.3d 287, and the parenthetical summary of facts set forth by the board matches the facts of that case.

Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094, at ¶ 15. Although she offered many excuses for her conduct throughout the disciplinary process, Billingsley ultimately admitted to the facts of her misconduct and attended a class to learn proper notarial procedure where she obtained authorization to serve as an online notary public. On these facts, we agree that a public reprimand is the appropriate sanction in this case.

### Conclusion

{¶ 23} Accordingly, Lon'Cherie' Darchelle Billingsley is publicly reprimanded for the above-described misconduct. Costs are taxed to Billingsley.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, STEWART, and DETERS, JJ., concur.

DONNELLY and BRUNNER, JJ., not participating.

————————————

Joseph M. Caligiuri, Disciplinary Counsel, and Kelli C. Murphy, Assistant Disciplinary Counsel, for relator.

Lon'Cherie' Darchelle Billingsley, pro se.

————————————