**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Mahoning Cty. Bar Assn. v. Macala*, **Slip Opinion No. 2024-Ohio-3158.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-3158

MAHONING COUNTY BAR ASSOCIATION *v*. MACALA.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Mahoning Cty. Bar Assn. v. Macala*, Slip Opinion No. 2024-Ohio-3158.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Conditionally stayed six-month suspension.*

(No. 2023-1561—Submitted March 12, 2024—Decided August 22, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-010.

_____

The per curiam opinion below was joined by FISCHER, DONNELLY, STEWART, and BOCK, JJ. KENNEDY, C.J., concurred in part and dissented in part and would impose a fully stayed one-year suspension. DEWINE and DETERS, JJ., concurred in part and dissented in part and would impose a public reprimand. GINGER BOCK, J., of the First District Court of Appeals, sat for BRUNNER, J.

**Per Curiam.**

{¶ 1} Respondent, Brian John Macala, of Salem, Ohio, Attorney Registration No. 0059224, was admitted to the practice of law in Ohio in 1992.

{¶ 2} In a May 2023 complaint, relator, Mahoning County Bar Association, charged Macala with professional misconduct related to his representation of the fiduciary of two related probate estates. Among other things, relator alleged that Macala signed waivers of partial accounts on behalf of the fiduciary and beneficiaries without authorization and then filed the documents with the probate court. Although Macala holds a part-time elected position as prosecutor and director of law for the City of Campbell, Ohio, the conduct at issue in relator's complaint does not involve his public office.

{¶ 3} The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors, but they did not agree on a recommended sanction. Macala testified at a hearing before a three-member panel of the Board of Professional Conduct. On relator's motion, the panel unanimously dismissed two alleged rule violations. The panel issued a report finding that Macala committed the stipulated rule violations and recommending that he be publicly reprimanded for his misconduct. The board adopted the panel's findings of fact and misconduct and recommended sanction.

{¶ 4} Relator objects to the board's recommended sanction. Relator argues that while an attorney's dishonest conduct generally warrants an actual suspension, an isolated incident of dishonesty in an otherwise blameless career, the absence of harm to clients, or the presence of abundant mitigating evidence may justify a downward departure to a fully stayed suspension, but no further. Analyzing our precedent, relator asserts that Macala's misconduct warrants a fully stayed 12-month suspension.

{¶ 5} After a thorough review of the record and our precedent, we adopt the board's findings of misconduct. We also sustain relator's objection in part and find

that a six-month conditionally stayed suspension is the appropriate sanction for Macala's misconduct.

## I. FINDINGS OF FACT AND MISCONDUCT

{¶ 6} Sandra Billec hired Macala to handle the estate of her sister-in-law, Marie E. Harris, after Marie died without a will in November 2018. Under the laws of descent and distribution, Marie's husband, Ronald J. Harris, was her sole heir. *See* R.C. 2105.06. Following Marie's death, Macala prepared a will for Ronald, naming Ronald's four nephews, Austin McClellan, John McClellan, Brett Billec, and Chad Billec, as equal beneficiaries of his estate. Ronald died in April 2019.

{¶ 7} The Harris estates were relatively complex, and Macala did substantial work over a period of approximately two years to identify the Harrises' assets. During his disciplinary hearing, Macala testified that he applied to Mahoning County Probate Court to open both estates and have Sandra Billec appointed as fiduciary just six or seven months into the process of identifying estate assets because some companies wanted to see letters of authority before they would discuss the Harrises' assets.

{¶ 8} By April 2020, the probate court had begun to send notices to Macala and Billec informing them that the estates' inventories were delinquent. The court eventually issued an order on September 23, 2020, directing Macala and Billec to appear and file the delinquent inventories. After obtaining a continuance in each case, Macala filed both inventories on November 16, 2020.

{¶ 9} Between the summer of 2020 and the spring of 2021, the probate court sent several postcards to Macala and Billec informing them that the fiduciary's accounts and status reports for both estates were also delinquent.

{¶ 10} In March 2022, the probate court issued notices of a hearing to file the status reports. At the same time, the court also issued citations and orders for Macala and Billec to appear and show cause why the fiduciary's accounts for both

estates were delinquent. The court set a late-April hearing for those matters. On Macala's motion, the court continued the hearing to mid-May.

{¶ 11} Three days before the May hearing date, Macala filed waivers of partial accounts for both estates that were purportedly signed by Billec as fiduciary. In addition, the waiver in Ronald's estate was purportedly signed by the four beneficiaries of that estate. In fact, Macala had signed the names of Billec (the fiduciary) and the beneficiaries without their knowledge or consent, though none of the signatures were notarized. Because the waivers were filed before the scheduled hearing, the probate court issued an entry in each case withdrawing the citations to appear and show cause.

{¶ 12} Within a few weeks of Macala's filing of the waivers, Billec discovered the forgeries and sent Macala a letter terminating his representation. Macala called Billec to apologize for his actions and to express that he understood her decision to terminate his representation. Macala cooperated in transitioning the estates and their respective case files to successor counsel. He received no fee for the services he provided for either estate.

{¶ 13} Chad Billec filed a grievance with relator regarding Macala's forgeries. In his written response to relator's letter of inquiry, Macala admitted to the alleged wrongdoing. Macala has also admitted in his stipulations and testimony before the panel that he signed the documents without the knowledge or consent of any of the purported signatories.

{¶ 14} The parties stipulated, and the board found by clear and convincing evidence, that Macala's conduct violated Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt those findings of misconduct.

## II. AGGRAVATING AND MITIGATING FACTORS AND RECOMMENDED SANCTION

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} As aggravating factors, the parties stipulated and the board found that Macala had acted with a dishonest or selfish motive and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(2) and (4). As for mitigation, the parties stipulated and the board found that Macala had a clean disciplinary record, made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, and presented evidence of his good character. *See* Gov.Bar R. V(13)(C)(1), (4), and (5). Indeed, Macala submitted 34 letters from judges, attorneys, friends, and family members attesting to his good character and reputation. One panel member described those letters as "some of the best [he had] ever seen."

{¶ 17} In determining the proper sanction to recommend for Macala's misconduct, the board began with the presumption that Macala's violation of Prof.Cond.R. 8.4(c) should result in an actual suspension from the practice of law unless mitigating factors warrant a stay. *See Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187 (1995), syllabus ("When an attorney engages in a course of conduct that violates [an ethical rule prohibiting dishonesty, fraud, deceit, or misrepresentation],[1] the attorney will be actually suspended from the practice of law for an appropriate period of time."). Quoting this court's decision in *Disciplinary Counsel v. Shaffer*, 2003-Ohio-1008, ¶ 11, the board noted that when

---

1. *Fowerbaugh* refers to former DR 1-102(A)(4), which has since been superseded by Prof.Cond.R. 8.4(c). Both rules prohibit lawyers from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

an attorney's misconduct has involved forgery or falsification, this court has "'tempered [its] disposition according to whether the case presents an isolated incident in an otherwise unblemished legal career or [a] more egregious course of conduct.'" In addition, the board acknowledged that this court "has 'typically imposed lesser sanctions of public reprimands or six-month fully stayed suspensions for isolated notary offenses,'" quoting *Akron Bar Assn. v. Binger*, 2014-Ohio-2114, ¶ 22.

{¶ 18} The board compared the facts of this case to those of six other cases in which we publicly reprimanded attorneys who fraudulently signed, notarized, or altered legal documents. *See Disciplinary Counsel v. Eisenberg*, 81 Ohio St.3d 295 (1998); *Warren Cty. Bar Assn. v. Clifton*, 2016-Ohio-5587; *Disciplinary Counsel v. Wilson*, 2014-Ohio-5487; *Disciplinary Counsel v. Mezacapa*, 2004-Ohio-302; *Mahoning Cty. Bar Assn. v Melnick*, 2005-Ohio-6265; *Columbus Bar Assn. v. Craig*, 2012-Ohio-1083. After considering those cases, the board recommended that we publicly reprimand Macala for his misconduct.

### III. RELATOR'S OBJECTION

{¶ 19} Relator objects to the board's recommended sanction. Like the board, relator begins its analysis with the proposition that an attorney's dishonest conduct generally warrants an actual suspension from the practice of law. Relator further acknowledges that an isolated incident of dishonesty in an otherwise blameless career, the absence of harm to clients, or the presence of abundant mitigating evidence may justify a downward departure from that general rule. However, relator contends that those mitigating factors may justify a downward departure to a fully stayed suspension—but not to a public reprimand as recommended by the board. Relator asserts that the facts of this case are distinguishable from the facts of the public-reprimand cases cited by the board, and that application of the appropriate precedent requires the imposition of a fully stayed 12-month suspension for Macala's misconduct.

**{¶ 20}** Macala, on the other hand, asserts that the board's decision is well-reasoned and supported by the facts of this case and our precedent. He therefore maintains that this court should adopt the board's recommended sanction and publicly reprimand him for his misconduct.

## IV. ANALYSIS

### A. *Fowerbaugh* and its progeny

**{¶ 21}** In *Fowerbaugh*, 74 Ohio St.3d at 191, we held that "when an attorney engages in a *course of conduct* that violates [an ethical rule prohibiting dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law for an appropriate period of time." (Emphasis added.) We have since treated our pronouncement in *Fowerbaugh* as a presumptive sanction, though we have not hesitated to impose lesser sanctions in the presence of significant mitigating evidence. *See, e.g.*, *Disciplinary Counsel v. Proctor*, 2012-Ohio-684, ¶ 18.

**{¶ 22}** Since deciding *Fowerbaugh*, we have found that an attorney who misrepresented to his clients the status of their case for nearly three years had engaged in a course of conduct that warranted an actual suspension from the practice of law. *See Cincinnati Bar Assn. v. Caliman*, 83 Ohio St.3d 461, 461-462 (1998). We have also determined that an attorney's "repeated deceit regarding [a client's] arbitration proceedings constitute[d] a 'course of conduct' rather than an isolated act and consequently warrant[ed] an actual suspension from the practice of law." *Akron Bar Assn. v. Hoffer*, 86 Ohio St.3d 97, 99 (1999). And in *Disciplinary Counsel v. Stollings*, 2006-Ohio-5345, we imposed a six-month suspension on an attorney who, in two letters sent six months apart, misled a client about the dismissal of the client's case and about the neglect that had caused the dismissal. *Id.* at ¶ 8-9, 13. There, we emphasized that "an actual suspension is particularly appropriate when an attorney's dishonesty has been directed toward a client." *Id.* at ¶ 13. Moreover, in another case involving multiple acts of misconduct, we

recognized that a judge's "pattern of misrepresentation in her interactions with judges, litigants, attorneys, and court personnel" constituted "pervasive conduct of misrepresentation" that alone warranted an actual suspension from the practice of law. *Disciplinary Counsel v. O'Neill*, 2004-Ohio-4704, ¶ 23, 52.

{¶ 23} Although *Fowerbaugh* held that an actual suspension was the appropriate sanction for a *course of conduct* involving dishonesty, fraud, deceit, or misrepresentation, *Fowerbaugh* at 191, we have at times suggested that *Fowerbaugh* stands for the proposition that *any* misconduct involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law. *See, e.g.*, *Disciplinary Counsel v. Beeler*, 2005-Ohio-1143, ¶ 44 (citing *Fowerbaugh* in support of the proposition that "[a] violation of [an ethical rule prohibiting an attorney from engaging in dishonesty, fraud, deceit, or misrepresentation] ordinarily calls for the actual suspension of an attorney's license"); *Disciplinary Counsel v. Karris*, 2011-Ohio-4243, ¶ 16 (citing *Fowerbaugh* to support the statement that "[g]enerally, misconduct involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law"); *Disciplinary Counsel v. Adelstein*, 2020-Ohio-3000, ¶ 26 (citing *Fowerbaugh* in support of the statement that "[c]onduct involving dishonesty, fraud, deceit, or misrepresentation usually requires an actual suspension from the practice of law").

{¶ 24} We have tempered the presumptive sanction of an actual suspension for an attorney's dishonest conduct in two sets of circumstances. First, we have done so when an attorney has engaged in an isolated incident of dishonest conduct. For example, in *Eisenberg*, 81 Ohio St.3d 295, an attorney directed his secretary to trace the signatures of an estate's beneficiaries onto the estate's inventory and receipt vouchers without the knowledge or consent of the beneficiaries, and then the attorney filed the forged documents in the probate court. There, we adopted the board's findings of fact and conclusions of law, including its findings that

8

Eisenberg had no intent to defraud anyone, that the signatures were signed as a convenience to the parties and were not under oath, and that no party suffered a financial loss as a result of his misconduct. *Id.* at 295-296. We acknowledged our holding in *Fowerbaugh*, but we found that Eisenberg's misconduct "was *an isolated incident* in an otherwise unblemished legal career and *not a course of conduct*." (Emphasis added.) *Id*. at 296. Therefore, instead of an actual suspension, we publicly reprimanded Eisenberg for his isolated incident of dishonest conduct. *Id.*

{¶ 25} Second, we have recognized that "an abundance of mitigating evidence can justify a lesser sanction." *Disciplinary Counsel v. Markijohn*, 2003-Ohio-4129, ¶ 8; *see also, e.g.*, *Disciplinary Counsel v. Cuckler*, 2004-Ohio-784, ¶ 10 (publicly reprimanding an attorney who, for more than a year before his admission to the Ohio bar, held himself out as "deputy chief legal counsel" to the Speaker of the Ohio House of Representatives even though he actually served as a legislative aide or law clerk under the supervision of a licensed attorney; mitigating factors included the attorney's expressed remorse and contrition, evidence of his good character and reputation, and the absence of any detrimental reliance on his misrepresentation); *Disciplinary Counsel v. Carroll*, 2005-Ohio-3805, ¶ 13 (imposing a conditionally stayed six-month suspension on an attorney who submitted inaccurate time sheets while working for a state board; mitigating factors included his cooperation with investigators, effort to remedy any harm caused by his errors, and the absence of a dishonest or selfish motive).

## B. A public reprimand may be an appropriate sanction for an attorney's dishonest conduct

{¶ 26} Here, relator argues that an isolated incident of dishonest misconduct in an otherwise blameless career alone or accompanied by abundant mitigating evidence may justify a downward departure from the presumptive sanction of an

actual suspension—but only to a fully stayed suspension and not to a public reprimand.

**{¶ 27}** However, as stated above, the board relied on *Eisenberg*, 81 Ohio St.3d 295, and five other cases involving attorneys who engaged in isolated incidents of document falsification to support its recommendation that Macala be publicly reprimanded for his misconduct in this case. Those cases unequivocally demonstrate that a public reprimand *can* be the appropriate sanction for isolated incidents of dishonest conduct arising from an attorney's fraudulent signing, alteration, and/or notarization of documents that are then filed with a court or government agency.

**{¶ 28}** For example, in *Clifton*, 2016-Ohio-5587, an attorney altered a deceased client's will by adding the erroneously omitted name of one of the client's children before filing the will in the probate court. *Id.* at ¶ 6, 14. The alteration constituted a single misrepresentation to a court that did not change the outcome of the probate proceedings. *Id.* at ¶ 5, 12. Clifton's conduct violated two of the three rules at issue in this case, namely Prof.Cond.R. 3.3(a)(1) and 8.4(c). *Clifton* at ¶ 9. No aggravating factors were present, but mitigating factors included Clifton's clean disciplinary record, his good-faith effort to rectify the consequences of his misconduct, and his full cooperation in the disciplinary process—including his self-report of his misconduct to relator. *Id.* at ¶ 7, 11. We publicly reprimanded Clifton for the misconduct. *Id.* at ¶ 14.

**{¶ 29}** In *Wilson*, 2014-Ohio-5487, an attorney signed the name of her granddaughter's mother on an affidavit with the mother's text-message authorization. *Id.* at ¶ 2, 7-8. Wilson then notarized the document without disclosing that she had signed the mother's name with authority, filed it in a guardianship proceeding related to her granddaughter, and instructed the child's mother to tell the magistrate that the signature was her own. *Id.* at ¶ 7-8. In addition to violating Prof.Cond.R. 3.3(a)(1) and 8.4(c) as Macala did in this case, Wilson

also violated Prof.Cond.R. 8.4(d), which prohibits lawyers from engaging in conduct that is prejudicial to the administration of justice. *Wilson* at ¶ 11. Like Macala, Wilson acted with a dishonest or selfish motive but also had a clean disciplinary record, exhibited a cooperative attitude toward the disciplinary proceedings, and presented evidence of her good character. *Id.* at ¶ 13. But Wilson's misconduct was not as extensive as Macala's is in this case. *Id.* at ¶ 18 (noting that Wilson's conduct was comparable to cases involving a single false notarization). We publicly reprimanded Wilson for her misconduct. *Id.* at ¶ 20.

{¶ 30} In *Mezacapa*, 2004-Ohio-302, the attorney signed a client's name to an affidavit *with* authorization and, like Wilson, notarized the signature without noting on the document that he had signed it on his client's behalf. The attorney then filed the affidavit in court along with a motion to modify the client's child-support obligation. *Id.* at ¶ 2. Mezacapa violated former disciplinary rules prohibiting attorneys from engaging in dishonest conduct and conduct prejudicial to the administration of justice. *Id.* at ¶ 3. In addition to finding the same mitigating factors present here in Macala's case, we found that Mezacapa "had not committed his misconduct out of self-interest" and had tried to rectify the consequences of his misconduct. *Id.* at ¶ 4. We publicly reprimanded Mezacapa for his misconduct. *Id.* at ¶ 5.

{¶ 31} In *Melnick*, 2005-Ohio-6265, the attorney relied on the assurances of an interested third party that three affiants' signatures were authentic, and he notarized them with a jurat that falsely stated that the affidavits were sworn to and subscribed in his presence. *Id.* at ¶ 5-6. We found that Melnick committed a single violation of a former disciplinary rule analogous to Prof.Cond.R. 8.4(c). *Melnick* at ¶ 10. Only one aggravating factor was significant to the board: the damage to the perception that an official notarial act is worthy of public trust. *See id.* at ¶ 11. In addition to finding the same three mitigating factors present in Macala's case, we also found that Melnick did not act in his own self-interest. *Id.* at ¶ 13. Melnick

also attempted to rectify his wrongdoing by speaking with each of the affiants to confirm the authenticity of their signatures before filing the affidavits in court, though the false notarial jurat remained. *Id.* at ¶ 7, 13. We publicly reprimanded Melnick for his misconduct. *Id.* at ¶ 17.

{¶ 32} The final case considered by the board was *Craig*, 2012-Ohio-1083. Craig forged a client's signature on an affidavit of transfer on death, notarized the forgery, and then filed it with the county recorder. *Id.* at ¶ 1. We found that Craig had committed three ethical violations that were nearly identical to Macala's violations in this case. *Id.* at ¶ 3. But in contrast to this case, there were no aggravating factors. *Id.* at ¶ 4. And in addition to the same mitigating factors present here, we also found that Craig did not act with a selfish motive and made a timely, good-faith effort to rectify the consequences of his misconduct. *Id.* We adopted the parties' consent-to-discipline agreement and publicly reprimanded Craig for his misconduct. *Id.* at ¶ 5-6.

{¶ 33} Our holdings in *Eisenberg*, *Clifton*, *Wilson*, *Mezacapa*, *Melnick*, and *Craig* demonstrate that a public reprimand can sometimes be the appropriate sanction for an attorney's dishonest conduct. We therefore overrule relator's objection to the board's recommended sanction to the extent that it asserts that a public reprimand cannot be an appropriate sanction when an attorney has engaged in an isolated incident of dishonest conduct or when there is an abundance of mitigating evidence.

### C. Macala's dishonest conduct

{¶ 34} In this case, Macala, on a single occasion, forged the signature of his client (Billec), as the fiduciary of the Harrises' estates, on two waivers of partial accounts. On one of those waivers, he also forged the signatures of the four beneficiaries to the estates. He then filed both of the forged documents in the probate court, thereby waiving the beneficiaries' rights to receive the partial accounting of the estates' assets that was then overdue. *See* R.C. 2109.301(B)(4)

(providing that after a waiver of partial account is filed, every administrator and executor shall render further accounts or file waivers of partial accounts at least once each year until the estate is closed unless a certificate of termination is filed).

{¶ 35} When asked to explain his actions, Macala testified that he thought he had identified the assets that would need to be distributed through the probate estates. But around the time that he received the notice that an account was due, a relative of the Harrises discovered a life insurance policy that could be an asset of the estates. Macala testified that he prepared an application to extend the administration of the estate and had Billec (the fiduciary) sign it with the understanding that they would need to investigate the newly discovered asset. But when Macala presented the application to the magistrate, he was informed that instead of the application to extend the administration, the court wanted a waiver of a partial account within seven days.

{¶ 36} Macala testified that after meeting with the magistrate, he took the file back to his office, set it down, and left it for nearly a week before he realized that the waivers were due the following day. He stated that he panicked and signed the names of Billec and the four beneficiaries without their authority. In contrast to the facts of *Wilson* and *Mezacapa*, both of which involved an attorney's authorized signing of single person's name combined with a false notarization, Macala *forged multiple signatures* like the attorney in *Eisenberg*. But in contrast to the attorney in *Craig*, who forged his client's signature and then falsely notarized that forgery, and the attorney in *Melnick*, who falsely notarized three signatures that he did not witness, Macala did not falsely notarize any of the signatures he forged.

{¶ 37} In his testimony before the panel, Macala admitted that what he did was wrong. Although he was found to have acted with a dishonest or selfish motive, the only benefit that he received from his actions was that he avoided having to appear in court to explain why he had not complied with the court's deadline for filing the partial accounts. Macala explained that if he had not

submitted the waivers or the partial accounts, he would have received "a very harsh rebuttal" or "incurr[ed] the court's wrath" for failing to comply with the court's order. He acknowledged, however, that if he had appeared at the show-cause hearing, it was safe to assume that the court would have imposed another deadline and that the case would have proceeded normally from there. Macala estimated that he had put somewhere between 75 and 100 hours of work into locating the Harrises' assets, for which he neither charged nor received a fee.

**D. Cases in which we have imposed conditionally stayed one-year suspensions for an attorney's dishonest conduct**

{¶ 38} Despite the similarities between this case and the cases cited by the board to support its recommended sanction of a public reprimand, relator contends that the facts of this case most closely resemble six cases in which we imposed conditionally stayed one-year suspensions on attorneys who engaged in various acts of dishonest conduct, most of which include a lack of candor toward a tribunal.

{¶ 39} Four of the cases that relator relies on are readily distinguishable from the facts of this case because they involve additional acts of misconduct or misconduct arising from criminal conduct—facts that simply are not present here. *See Akron Bar Assn. v. Gibson*, 2011-Ohio-628, ¶ 2, 11 (in addition to making misrepresentations of fact to a court when seeking payment for nonlegal services rendered to client, an attorney induced an escrow agent to release funds without obtaining proper approval and withdrew from the representation of a second client without obtaining leave of court or protecting the client's interests); *Medina Cty. Bar Assn. v. Cameron*, 2011-Ohio-5200, ¶ 7-8 (in addition to making false statements to a tribunal, an attorney communicated with a person known to be represented by a lawyer about the subject of that representation without first obtaining the consent of that person's lawyer); *Columbus Bar Assn. v. Chodosh*, 2019-Ohio-765, ¶ 2-3, 9 (in addition to forging a client's signature on several documents, notarizing one of those documents, and then submitting the notarized

document to an insurer, an attorney also failed to reasonably communicate with *two* clients, failed to properly disclose a fee-sharing arrangement to his client, and disclosed confidential client information without consent); *Mahoning Cty. Bar Assn. v. Cochran*, 2018-Ohio-4, ¶ 7, 9 (an attorney's misconduct consisted of making incomplete and misleading statements to a tribunal during his own federal criminal trial, conduct that led him to plead guilty to a single count of misbehavior in the presence of the court).

**{¶ 40}** The other two cases that relator relies on to support its recommended sanction are likewise distinguishable from this case on their facts. In each of those cases, the attorney's misconduct was more egregious because the forgeries or alterations were undertaken in an effort to conceal other acts of misconduct.

**{¶ 41}** First, in *Disciplinary Counsel v. Niermeyer*, 2008-Ohio-3824, Niermeyer voluntarily withdrew a worker's compensation claim with his client's permission, but he failed to refile the claim before it was time-barred. *Id.* at ¶ 3-4. Niermeyer did not forge his client's signature to a document to obtain additional time like Macala. Instead, Niermeyer attempted to remedy his neglect by photocopying a date stamp from an unrelated case and then superimposing that date stamp onto a document from the client's case to make it appear that the document had been timely filed. *Id.* at ¶ 4. He then filed the document with the Bureau of Workers' Compensation in the hope that the agency would not notice the fabrication and would allow the claim to be processed. *Id.* Overwhelmed with guilt, Niermeyer self-reported his misconduct to disciplinary counsel, withdrew the claim, and only then attempted to notify his client of the missed deadline. *Id.* at ¶ 5-6.

**{¶ 42}** We found that Niermeyer's conduct violated former disciplinary rules that prohibited a lawyer from engaging in dishonest conduct and from creating or preserving evidence that the lawyer knows to be false. *Id.* at ¶ 7. Like Macala, Niermeyer had a clean disciplinary record, fully cooperated in the disciplinary

proceedings, and presented evidence of his good character and reputation. *Id.* at ¶ 9. Niermeyer also made immediate efforts to rectify the consequences of his misconduct. *Id.* The sole aggravating factor was Niermeyer's dishonest or selfish motive. *Id.* But there, in contrast to Macala, Niermeyer altered the documents in order to conceal his neglect in failing to refile his client's claim before it was time-barred.

{¶ 43} In determining the appropriate sanction for Niermeyer's misconduct, we acknowledged our holding in *Fowerbaugh*, 74 Ohio St.3d 187. *Niermeyer* at ¶ 12. But we found that Niermeyer's misconduct was an isolated incident rather than a course of conduct. *Id.* at ¶ 13. Citing his willingness to accept responsibility for his actions and his "otherwise unblemished legal career," we concluded that he was unlikely to commit additional misconduct going forward. *Id.* Rather than imposing an actual suspension from the practice of law, we suspended Niermeyer for 12 months with the entire suspension stayed on the condition that he commit no further misconduct. *Id.* at ¶ 14.

{¶ 44} Second, in *Disciplinary Counsel v. Champion*, 2016-Ohio-8023, Champion responded to a civil action to collect his delinquent municipal income taxes by repeatedly and falsely claiming that he had paid the taxes. In an attempt to support his repeated false claims, he also submitted a fraudulently altered copy of a canceled check to the taxing authority that purported to show partial payment of the taxes owed. *Id.* at ¶ 4, 5. The aggravating and mitigating factors in *Champion* were identical to those of this case—except that Champion was not found to have committed multiple offenses as Macala was here. *Id.* at ¶ 8. We imposed a one-year conditionally stayed suspension for Champion's dishonest conduct. *Id.* at ¶ 11.

{¶ 45} Here, in contrast to Niermeyer and Champion, Macala did not engage in dishonesty to conceal any other alleged or actual wrongdoing. Rather, the evidence shows that he the forged the signatures of the estates' fiduciary and

beneficiaries in a misguided effort to obtain additional time to provide a complete accounting of the estates' assets to the probate court. Moreover, the parties stipulated and the board found that Macala's misconduct did not affect the outcome of the probate case or result in any harm to the client or the beneficiaries. While his conduct fell below the standards we have set for Ohio attorneys, we conclude that it was not as egregious as the misconduct at issue in *Niermeyer* and *Champion*.

### E. Macala's misconduct warrants a conditionally stayed six-month suspension

{¶ 46} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases. We have consistently recognized that "the goal of disciplinary proceedings is not to punish the errant lawyer, but to protect the public." *Toledo Bar Assn. v. Hales*, 2008-Ohio-6201, ¶ 21. And "[w]hile consistency is also a goal, 'we examine each case individually and impose the discipline we believe appropriate based on the unique circumstances of each case.'" *Id.*, quoting *In re Disciplinary Action Against Ruffenach*, 486 N.W.2d 387, 390 (Minn. 1992).

{¶ 47} Macala's misconduct in this case consisted of forging the signatures of five people—namely, the fiduciary and four beneficiaries—on a waiver of partial accounting in one estate and forging the signature of the fiduciary on a separate waiver of partial accounting in a second estate. That misconduct is more serious than the isolated instances of signature- and notary-related misconduct at issue in the cases cited by the board, but not as egregious as the cases involving the concealment of other acts of misconduct in the cases cited by relator. After weighing Macala's misconduct, the aggravating and mitigating factors present in this case, and our precedent, we conclude that the appropriate sanction for Macala's misconduct is a conditionally stayed six-month suspension from the practice of law.

We therefore sustain in part relator's objection to the board's recommended sanction.

## V.  CONCLUSION

{¶ 48} Accordingly, Brian John Macala is suspended from the practice of law in Ohio for six months with the entire suspension stayed on the condition that he commit no further misconduct.  If Macala fails to comply with the condition of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxed to Macala.

Judgment accordingly.

_____

J. Michael Thompson and David C. Comstock, Jr., Bar Counsel, for relator.

John B. Juhasz Jr., for respondent.

_____