**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Byron*, **Slip Opinion No. 2024-Ohio-5433.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5433

DISCIPLINARY COUNSEL *v*. BYRON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Byron*, Slip Opinion No. 2024-Ohio-5433.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Conditionally stayed one-year suspension.*

(No. 2024-1102—Submitted September 17, 2024—Decided November 20, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-028.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ. KENNEDY, C.J., concurred in part and dissented in part and would not stay the suspension. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Evan Thomas Byron, of Pepper Pike, Ohio, Attorney Registration No. 0081100, was admitted to the practice of law in Ohio in 2006.

{¶ 2} In a September 26, 2023 complaint, relator, disciplinary counsel, charged Byron with professional misconduct arising from his misrepresenting to a court the nature of his relationship with a client and mishandling his Interest on Lawyers' Trust Account ("IOLTA"). The parties entered into stipulations of fact, misconduct as to the IOLTA-mishandling count, and mitigating factors and submitted stipulated exhibits.

{¶ 3} A three-member panel of the Board of Professional Conduct found that Byron committed the charged misconduct and recommended imposing a one-year suspension, with the suspension stayed on the conditions that Byron commit no further misconduct and pay the costs of the proceedings. The board adopted the panel's findings of fact and conclusions of law and recommends that we impose a one-year suspension, with the suspension stayed on the condition that Byron refrain from further misconduct. Byron filed a no-objection brief in response to the board's findings and recommendations. *See* Gov.Bar R. V(17)(B)(2).

{¶ 4} After reviewing the record and our applicable caselaw, we adopt the board's findings of misconduct and recommended sanction.

## MISCONDUCT

{¶ 5} In 2021, Byron met Helga Semaj, and they became romantically involved for a few months. Despite ending their romantic relationship, they remained friends. In March 2022, Semaj hired Byron on a contingent-fee basis to sue her ex-boyfriend. Byron and Semaj soon resumed their romantic relationship.

{¶ 6} Beginning in July 2022, Byron also represented Semaj in two separate protection-order cases (one she filed against her ex-husband and one he filed against her), a criminal case, her divorce, and another lawsuit against her ex-husband. Semaj verbally agreed to pay Byron a $15,000 retainer to be charged at

an hourly rate of $300 for his representation in the protection-order case she had filed, her divorce, and her lawsuit against her ex-husband. This agreement was never put into writing. Semaj paid the retainer in two payments in July and August, both of which Byron deposited into his personal business account. At the time he made the deposits, he had not billed the hours necessary to earn the retainer. Semaj's ex-husband hired Joseph Stafford to represent him in both protection-order cases and the divorce, and he hired Christina Spallina to defend him in the civil suit.

{¶ 7} When providing trial exhibits to Stafford in the protection-order case Semaj had filed against her ex-husband, Byron unintentionally revealed his relationship with Semaj. Stafford gave this evidence to Spallina, and on August 15, 2022, she sought Byron's disqualification in the civil case. On August 16, Stafford also moved to disqualify Byron in one of the protection-order cases. At an August 17 hearing in the protection-order case, Byron misrepresented the status of his relationship with Semaj, testifying, "[T]here is no relationship other than an attorney/client relationship now." The next day, in his written response to the motion Spallina filed to disqualify him in the civil case, Byron again mischaracterized his romantic relationship with Semaj as existing only in the past. Byron later admitted to still being in a relationship with Semaj when he was deposed in the divorce case.

{¶ 8} On September 21, Byron refunded Semaj's retainer from his personal account, and Semaj wrote a new check for the retainer. Byron deposited the check into his IOLTA account and paid himself $10,000 without confirming that the funds were available. Semaj's check had not cleared, so Byron paid himself from other clients' funds. Semaj then wrote a new check that Byron deposited into his IOLTA account, and that check cleared. Byron also deposited personal funds into his IOLTA account during this time.

**{¶ 9}** The board found that Byron violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separately from the lawyer's own property), 1.15(b) (prohibiting a lawyer from depositing his or her own funds in a client trust account except to pay or obtain a waiver of bank service charges), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We adopt the board's findings of misconduct.

## SANCTION

**{¶ 10}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 11}** The aggravating factors the board found were that Byron had had a dishonest or selfish motive and refused to acknowledge the wrongful nature of his conduct. *See* Gov.Bar R. V(13)(B)(2) and (7). The board found as the sole mitigating factor Byron's clean disciplinary record. *See* Gov.Bar R. V(13)(C)(1).

**{¶ 12}** In recommending a sanction for Byron's misconduct, the board recognized that violations of ethical rules prohibiting dishonesty, fraud, deceit, or misrepresentation carry a presumption that an actual suspension from the practice of law will be imposed. *See Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261, syllabus. However, the board noted that Byron had no history of discipline and that his client had suffered no harm. Citing cases in which we imposed fully stayed suspensions for violations of Prof.Cond.R. 3.3(a)(1), the board recommends that we suspend Byron for one year, with the suspension fully stayed on the condition

that he refrain from further misconduct. We agree with the board's recommendation based on a review of our caselaw.

{¶ 13} In *Medina Cty. Bar Assn. v. Cameron*, 2011-Ohio-5200, the attorney hired an expert witness and paid him a $2,000 retainer. After the expert prepared a report, he billed Cameron for his work. Cameron failed to pay the invoice, and the expert sued him. After Cameron failed to timely file an answer, the expert moved for a default judgment and the court scheduled a hearing. In response, Cameron sought a continuance, falsely representing to the court that he and the expert had settled the case. Ultimately, the parties did reach an agreement, and the complaint was dismissed. We concluded that a conditionally stayed one-year suspension was the appropriate sanction based on the isolated nature of the misconduct and the limited amount of harm Cameron had caused. *Id*. at ¶ 17-18.

{¶ 14} In *Disciplinary Counsel v. Henderson*, 2002-Ohio-1756, the attorney used letterhead falsely suggesting that he was a partner of another attorney and misrepresented to a court the fees he was going to charge clients, though he did render the agreed-upon services to his clients. Regarding mitigation, we noted that Henderson was well-respected and had no prior discipline. *Id.* at ¶ 11. Based on the conduct and mitigation, we concluded that a fully stayed six-month suspension was appropriate. *Id.* at ¶ 11-12.

{¶ 15} In *Toledo Bar Assn. v. DeMarco*, 2015-Ohio-4549, the attorney made comments that threatened violence against his own expert witness, deliberately concealed evidence from the court, and initially failed to show remorse for his misconduct. In his attempt to conceal evidence from the court, DeMarco repeatedly lied to opposing counsel and the court and continued his dishonesty until confronted with evidence of his lying. Based on his misconduct, clean disciplinary record, and evidence of his good character and reputation, we concluded that a one-year suspension, with six months conditionally stayed, was warranted. *Id.* at ¶ 15.

**{¶ 16}** After considering Byron's misconduct and our caselaw on dishonesty and IOLTA-rule violations, we conclude that a conditionally stayed one-year suspension is warranted. Like the attorneys in *Cameron* and *Henderson*, Byron made misrepresentations to a court, by lying about his relationship with his client in response to opposing counsel's motions to disqualify him. And while Byron's misrepresentations were material like the dishonesty in *Cameron*, they did not harm his client and essentially were an isolated incident, repeating the same falsehood one day apart. Moreover, like the dishonesty in *Henderson*, Byron's misrepresentations were not related to the underlying merits of the cases. In contrast, the attorney in *DeMarco* made repeated misrepresentations to the court, threatened violence to a third party, and tried to conceal facts from the court. Therefore, Byron's misconduct is not as egregious as DeMarco's. Instead, his dishonesty is more akin to that of Cameron and Henderson, whose suspensions we conditionally stayed.

**{¶ 17}** "Although an actual suspension from the practice of law is the general sanction when an attorney engages in dishonest conduct, a lesser sanction may be appropriate when the misconduct is an isolated incident in an attorney's career or when little or no harm resulted from the misconduct." *Cameron*, 2011-Ohio-5200, at ¶ 17. Thus, despite the presumptive sanction of an actual suspension for an attorney's dishonest conduct, we have conditionally stayed suspensions in full when the attorney's misrepresentations were made in the context of representing a single client, *see Disciplinary Counsel v. Farris*, 2019-Ohio-4810, ¶ 16, and when the dishonest conduct did not result in any harm to the client, *see Mahoning Cty. Bar Assn. v. Macala*, 2024-Ohio-3158, ¶ 45.

**{¶ 18}** "[W]e have consistently recognized that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. Edwards*, 2012-Ohio-5643, ¶ 19, citing *Disciplinary Counsel v. O'Neill*, 2004-Ohio-4704, ¶ 53. So, although the presumptive sanction

for Byron's misconduct is an actual suspension from the practice of law under *Fowerbaugh*, we conclude that a conditionally stayed one-year suspension is sufficient to protect the public from further misconduct. We therefore adopt the board's recommended sanction.

## CONCLUSION

{¶ 19} Accordingly, Evan Thomas Byron is suspended from the practice of law in Ohio for one year, with the suspension fully stayed on the condition that he refrain from further misconduct. If Byron violates the condition of the stay, the stay will be lifted and he will serve the one-year suspension in its entirety. Costs are taxed to Byron.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Ryan N. Sander and Matthew A. Kanai, Assistant Disciplinary Counsel, for relator.

Evan Byron, respondent.

_____